[Crim. No. 8752.   Second Dist., Div. Four.   Oct. 4, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. MELVIN JOE HERD, Defendant and Appellant.

848

Joseph H. Lewis for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and C. Anthony Collins, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was found guilty of committing an assault with a deadly weapon upon Bertha Lee Herd, in violation of section 245 of the California Penal Code. Probation was denied and he was sentenced to state prison for the term prescribed by law. He appeals from the judgment of conviction.

On the morning of June 23, 1962, defendant visited the home of his ex-wife, Bertha Lee Herd. That evening defendant and Mrs. Herd attended a party at a friend's house. At approximately 2 a.m. the following morning, Mrs. Herd went with defendant to "get some coffee," after which defendant, refusing Mrs. Herd's request to be driven to her sister's house, drove instead to a motel. Prior to their arrival, defendant had said nothing about going to a motel. Upon arriving at the motel, defendant asked Mrs. Herd to spend the night with him there. She refused and left the automobile. Whereupon, defendant grabbed her and with a knife inflicted a cut across the lower part of her abdomen. After being cut, she ran to the motel and asked the manager to call the police. She was taken to a hospital by ambulance and remained there for nine days under treatment for the wound.

Deputy Sheriff Barlup testified he went to the motel in response to a call stating that someone had been injured. He saw Mrs. Herd lying on the front porch covered with blood ''from the waist down.'' Defendant was standing over her ''asking her how she was.'' They removed Mrs. Herd's skirt and Deputy Barlup observed she had a large cut across her lower abdomen, directly at her private parts, and from which ''some of her intestines or something was protruding.'' She told the officer defendant had cut her and that she wanted him to go to jail. Defendant was then placed under arrest and when asked where the knife was located, he pointed out its location approximately 50 feet from where the victim was lying. Defendant admitted to Deputy Barlup, in the presence of Deputy Miklos, that he had cut Mrs. Herd with the knife which the deputy had found (introduced at the trial as an exhibit), but stated that he had not done it intentionally.

Defendant, testifying in his own behalf, stated that since the time Mrs. Herd obtained an interlocutory decree of divorce in 1960, he had visited her and their child frequently, and had lived with her occasionally. On June 23, they went to a friend's house and had several drinks. When they left, defendant thought they would go back to Mrs. Herd's apartment, but she said, ''Let's go some place else.'' Defendant agreed and they went to a motel. Finding no vacancy, they had coffee and something to eat at a hot dog stand, and then went to another motel, where defendant registered as Mr. and Mrs. Melvin Herd, paid $3.00 and they went to the assigned room. Defendant then took out a knife which he used for ''cutting lead and okum,'' and while playing with it, ''swinging it ... apparently she walked into it.''

Defendant contends that the prosecution failed to establish the corpus delicti of the crime of assault with a deadly weapon because no evidence was introduced to show that the knife used by defendant to cut Mrs. Herd was in fact a deadly or dangerous weapon, or to show that defendant intended ''to commit violent injury upon another.'' No merit is found in this contention.

Penal Code, section 245, under which defendant was convicted, sets forth the elements of the crime of assault with a deadly weapon in the following language: ''Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable....'' An assault is defined in section 240 of the Penal Code as ''... an

unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.'' ■ Defendant's present ability to perpetrate a violent injury (the assault element) was conclusively established by the evidence showing he did in fact cut Mrs. Herd. ■ The testimony concerning the gravity of the wound, causing hospitalization for nine days, established the violent nature of the injury.

■ Although not an inherently deadly weapon, a knife becomes such when used in such a manner as to cause severe bodily injury. (*People* v. *Kersey*, 154 Cal.App.2d 364, 366 [316 P.2d 52]; *People* v. *Arguilida*, 85 Cal.App.2d 623, 625 [193 P.2d 478].) ■ In determining whether an instrument which is not inherently deadly or dangerous, assumes these characteristics, the trier of fact looks to the nature of the weapon, the manner of its use, the location on the body of the injuries inflicted, and to the extent of such injuries. (*People* v. *Basnett*, 186 Cal.App.2d 108, 118 [8 Cal.Rptr. 804].)

■ Specific intent is not an element of the crime of assault with a deadly weapon. ''The intent may be inferred from the doing of the wrongful act.'' (*People* v. *Roshid*, 191 Cal.App.2d 692, 694 [12 Cal.Rptr. 794].)

■ Here, the trial court found, upon what we are convinced was amply sufficient evidence, that defendant, being angered by Mrs. Herd's refusal to accompany him to the motel, took hold of her and then cut her with a knife.

■ Also, without merit is defendant's contention that the trial court erred in denying his application for probation even though the probation officer's report allegedly indicated that defendant had no prior criminal record and in other respects was eligible for probation. ■ ''Probation is not a matter of right but an act of grace and clemency which is within the court's discretion, and such an exercise of discretion will not be interfered with on appeal in the absence of a clear showing of abuse. [Citation.]'' (*People* v. *Jermane*, 194 Cal.App.2d 754, 757 [15 Cal.Rptr. 221].)

■ The trial court in the case at hand, clearly and succinctly summed up its decision denying defendant's application for probation, with the statement: ''I am sorry, I can't go along with it. This man was within just a hair's breath [*sic*] of a murder charge.'' No abuse of discretion has been shown.

Judgment affirmed.

Burke, P. J., and Kingsley, J., concurred.