[Crim. No. 14867. In Bank. Jan. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JESS GOMEZ ROCHA, Defendant and Appellant.

[Jan. 1971]

## Counsel

Neil A. Helding, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Charles P. Just, Joel S. Primes and Edward A. Hinz, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

WRIGHT, C. J.—The principal question raised by this appeal is whether a violation of Penal Code section 245, subdivision (a) (assault with a

deadly weapon) is a crime requiring proof of general or specific intent. In holding that only a general criminal intent must be demonstrated, we hopefully eliminate the confusion on this issue which has developed throughout the courts of this state.

Defendant, Jess Rocha, was charged in an information with assault with a deadly weapon upon Pete Aguilar Piceno, a violation of Penal Code section 245, subdivision (a). A jury found him guilty as charged and the trial court entered judgment on the verdict and sentenced him to prison for a minimum term of six months pursuant to Penal Code section 1202b. Defendant appeals.

On March 17, 1968, Piceno was drinking with a friend, Mary Sanchez, in the Capitol Bar. Piceno went to the restroom and upon his return to the barroom discovered that defendant was occupying the bar stool that Piceno had previously been using. An argument concerning the seat ensued and Rocha invited Piceno to accompany him out the back door of the bar. Once outside, defendant unexpectedly turned and swung at Piceno with a knife, succeeding in piercing his abdominal wall and liver. After stabbing Piceno twice more, Rocha fled.

Rocha, testifying in his own behalf, gave a different version of the encounter contending that it was Piceno who originally had the knife and who suggested that they go outside. Claiming self-defense, Rocha testified that he had no intention of stabbing Piceno, but admitted forcing the knife from Piceno's hand and swinging once at the victim, who was wounded when he kicked at Rocha.

Rocha asserts as error the refusal of the trial court (1) to instruct that evidence of intoxication may be considered in determining whether Rocha had the requisite intent to commit assault with a deadly weapon; (2) to instruct that assault with a deadly weapon requires a specific intent to injure; (3) to permit the introduction of testimony relative to Rocha's reputation for not carrying a knife; and (4) to declare a mistrial after alleged prejudicial misconduct of the district attorney.

### I. Voluntary Intoxication Issue

█ Voluntary intoxication is not a defense to assault with a deadly weapon. (*People* v. *Hood*, 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370].) In *Hood* we concluded that "it would . . . be anomalous to allow evidence of intoxication to relieve a man of responsibility for the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner." (*People* v. *Hood, supra,* at p. 458.) Accordingly the trial court properly refused to instruct that the

jury should consider the effect of intoxication upon Rocha's capability to form the requisite intent to commit assault with a deadly weapon. (See also *People* v. *Seals,* 1 Cal.3d 574 [82 Cal.Rptr. 873, 462 P.2d 993].)

## II. Specific Intent Issue

■ Rocha's principal contention is that assault with a deadly weapon is a specific intent crime. In *People* v. *Hood, supra,* the issue of whether simple assault and assault with a deadly weapon are general or specific intent offenses was reexamined. Faced with the assertion that voluntary intoxication should be a defense to those crimes, we declined to categorize the intent requirement as either general or specific, but ruled that the "nature of the requisite intent is such that it is not susceptible to negation through a showing of voluntary intoxication." Nevertheless, our opinion in *Hood* has been interpreted, albeit with conflicting results, as being determinative of the issue.[1]

In *People* v. *Hood, supra,* 1 Cal.3d 444, it was recognized that the terms, general and specific intent, are often indistinguishable when viewed in contexts other than the applicability of the defense of voluntary intoxication.[2] Policy considerations, not the specific intent-general intent dichot-

---

[1]See Witkin, California Crimes (1969 Supp.) section 264, pages 88-89: "In *People* v. *Hood, supra,* the court reexamined the question, reviewed the authorities and pointed out that the distinction between specific and general intent crimes evolved as a judicial response to the problem of the intoxicated offender. (1 Cal.3d 455.) The conclusion reached was that neither assault nor assault with a deadly weapon should be regarded as specific intent crimes. . . ." (See also, *People* v. *Livingston,* 4 Cal.App.3d 251 [84 Cal.Rptr. 237]; *In re C. D. H.,* 7 Cal.App.3d 230 [86 Cal.Rptr. 565].) The opposite conclusion was reached by the Committee on Standard Jury Instructions, Criminal, in the 1970 edition of CALJIC. Proposed jury instruction "Assault With a Deadly Weapon" 9.03 reads in part:

"An assault with a deadly weapon is an unlawful attempt, coupled with a present ability, with the specific intent to commit a violent injury upon the person of another with a deadly weapon. . . .

"The necessary elements of the offense are the unlawful attempt with the specific intent to commit a violent injury upon the person of another by the use of a deadly weapon in that attempt, and the then present ability to accomplish the injury."

See also CALJIC 9.00 wherein assault is defined as "an unlawful attempt, coupled with a present ability and with the specific intent, to commit a wrongful act by means of physical force upon the person of another." (See *People* v. *Spence,* 3 Cal.App.3d 599, 605 [83 Cal.Rptr. 711]; *People* v. *Marceaux,* 3 Cal.App.3d 613 [83 Cal.Rptr. 798].)

[2]"The distinction between specific and general intent crimes evolved as a judicial response to the problem of the intoxicated offender." (*People* v. *Hood, supra,* 1 Cal.3d 444, 455.)

"The adjective 'specific' seems to be somewhat pointless, for the intent is no more specific than any other intent required in criminal law. The most that can be said is that the intent is specifically referred to in the indictment. There is no substantive difference between an intent specifically mentioned and one implied in the name of the crime." (Williams, Criminal Law—The General Part (2d ed. 1961) § 21, p. 49.)

omy, were the principal bases of that opinion. Since alcohol is so often a factor inducing simple assaults and assaults with a deadly weapon it would be anomolous to permit exculpation because of intoxication. However, an additional factor was the variance between the nature of the intent to commit a battery which has always been deemed a general intent and the intent to commit an assault for the purpose of causing a particular additional result (e.g., assault with intent to murder or rape). The latter intent has been labeled a specific intent.

The legislative history of Penal Code section 245 indicates that the Legislature differentiated assault with a deadly weapon from specific intent crimes. When the Penal Code was adopted in 1872 section 245 read, "Every person who, with intent to do bodily harm," commits an assault with a deadly weapon is guilty of a felony.[3] All reference to intent was deleted from the section in 1873 when it was amended to its present form. In *People* v. *Turner*, 65 Cal. 540, 542 [4 P. 553], the court rejected defense counsel's argument that the 1873 amendment had not changed the essential elements of the crime and stated that it was unnecessary for the indictment to charge or for the jury to find that the assault was made with the intent to cause great bodily harm.

Some earlier cases held that because of an assumed failure of the Legislature to include intent as a requirement of the crime, a violation of Penal Code section 245 could be predicated upon mere reckless conduct.[4] In *People* v. *Carmen*, 36 Cal.2d 768 [228 P.2d 281], we disapproved those cases and held that mere reckless conduct alone cannot constitute an assault.[5] It does not follow, however, that assault with a deadly weapon should be classified as a specific intent crime.

Traditionally, simple assault and assault with a deadly weapon have

---

[3]In 1850 the Legislature adopted "An Act Concerning Crimes and Punishment." Section 50 thereof which concerned assault with a deadly weapon read in relevant part: "An assault with a deadly weapon, instrument, or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears or where the circumstances of the assault show an abandoned and malignant heart shall subject the offender to imprisonment. . . ." The essential elements of the offense were incorporated into the definition of the crime as contained in the 1872 version of the Penal Code.

[4]*People* v. *Corlett*, 67 Cal.App.2d 33, 54 [153 P.2d 595, 964]: "The defendant was convicted of a mere assault with a deadly weapon under section 245 of the Penal Code. That section provides that 'Every person who commits an assault . . . with a deadly weapon or instrument or by any means or force *likely to produce great bodily injury*,' is guilty of that offense. The *intention* to actually injure another is not mentioned in that section." (See also other cases cited in *Carmen*.)

[5]Thus a person who recklessly exhibits a weapon in a threatening manner which accidentally discharges injuring another does not commit an assault with a deadly weapon, but would be guilty of violating Penal Code section 417.

been referred to as "general intent" crimes.[6] The mens rea of such offenses is established by showing "an intent to perform an act of such a nature that the law declares its commission punishable as a criminal offense."[7] The act must be committed wilfully but knowledge that it is unlawful or a belief that it is wrong need not be proven. We adhere to those cases that hold that assault with a deadly weapon is a general intent crime. It remains to define what that intent is.[8]

An assault is an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another, or in other words, it is an attempt to commit a battery. (1 Witkin, Cal. Crimes (1963) § 255, p. 241; *People* v. *McCaffrey,* 118 Cal.App.2d 611 [258 P.2d 557].) Accordingly the intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being "any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.) We conclude that the criminal intent which is required for assault with a deadly weapon and set forth in the instructions[9] in the case at bench, is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. Given that intent it is immaterial whether or not the defendant intended to violate the law[10] or knew that his conduct was unlawful. The intent to cause any particular injury (*People* v. *Carmen, supra,* 36 Cal.2d 768, 776), to severely injure another,[11] or to injure in the sense of inflicting bodily harm[12] is not necessary.

[6]See cases cited in *People* v. *Hood, supra,* at pages 452-453.

[7]Fricke-Alarcon, California Criminal Law (10th ed. 1970) page 31.

[8]*People* v. *Marceaux,* 3 Cal.App.3d 613 [83 Cal.Rptr. 798], and *People* v. *Spence,* 3 Cal.App.3d 599 [83 Cal.Rptr. 711] are disapproved to the extent they are inconsistent with this opinion.

[9]See footnote 13.

[10]*People* v. *Wright,* 258 Cal.App.2d 762 [66 Cal.Rptr. 95], certiorari denied 393 U.S. 896 [21 L.Ed.2d 177, 89 S.Ct. 154]; *People* v. *Gaines,* 247 Cal.App.2d 141 [55 Cal.Rptr. 283]; *People* v. *Ingram,* 91 Cal.App.2d 912 [206 P.2d 36]; *People* v. *Griffin,* 90 Cal.App.2d 116 [202 P.2d 573]; *People* v. *Lopez,* 81 Cal.App. 199 [253 P. 169].

[11]*People* v. *Finley,* 219 Cal.App.2d 330 [33 Cal.Rptr. 31]; *People* v. *Pullins,* 95 Cal.App.2d 902 [214 P.2d 436]; *People* v. *Schmidt,* 66 Cal.App.2d 253 [152 P.2d 1021]; *People* v. *Bumbaugh,* 48 Cal.App.2d 791 [120 P.2d 703]; *People* v. *Herd,* 220 Cal.App.2d 847 [34 Cal.Rptr. 141].

[12]A battery must be contemplated, but only an "injury" as that term is used with respect to a battery need be intended. "It has long been established, both in tort and criminal law, that 'the least touching' may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark." (1 Witkin, Cal. Crimes (1963) *supra,* pp. 243-244.)

"The 'violent injury' here mentioned is not synonymous with 'bodily harm,' but includes any wrongful act committed by means of physical force against the person

In the case at bench there was ample evidence from which the jury could infer that the defendant had the intent to commit a battery upon the victim, Piceno, and the instructions given clearly informed the jury of the elements of assault with a deadly weapon.[13] (*People* v. *Wilson,* 66 Cal.2d 749, 765 [59 Cal.Rptr. 156, 427 P.2d 820].)

### *III. Reputation Issue*

Rocha asserts further that evidence indicating that he was not known to carry a knife was improperly excluded. This contention is without merit. Joe Sanchez, the owner of the Capitol Bar, was asked, "[H]ave you ever seen Mr. Rocha with a knife?" After an offer of proof that defendant intended to demonstrate that he did not characteristically carry such a weapon, the People's objection to the question as irrelevant was sustained. Evidence of a person's reputation may be introduced to prove that on a specified occasion his conduct was in conformity with an established trait. (Evid. Code, § 1102.) However, no foundation was laid establishing that the witness was aware of defendant's general reputation nor was the question phrased in a manner designed to elicit proof of character, trait or custom. (*People* v. *Carnavacci,* 119 Cal.App.2d 14, 17 [258 P.2d 1127].)

Evidence that the witness had never seen Rocha carry a knife has minimal relevance to his conduct on the particular night in question. It was within the sound discretion of the trial court to exclude evidence of such slight probative value on the ground that its worth was outweighed by the probability that its introduction would necessitate undue consumption of time or mislead or confuse the jury. (Evid. Code, § 352.)

---

of another, even although only the feelings of such person are injured by the act." (*People* v. *Bradbury,* 151 Cal. 675, 676-677 [91 P. 497].)

See also, *People* v. *McCoy,* 25 Cal.2d 177 [153 P.2d 315]; *People* v. *Sandoval,* 222 Cal.App.2d 348 [35 Cal.Rptr. 227]; *People* v. *Walker,* 99 Cal.App.2d 238 [221 P.2d 287]; *People* v. *Stephens,* 168 Cal.App.2d 557 [336 P.2d 221]; *People* v. *Lim Dum Dong,* 26 Cal.App.2d 135 [78 P.2d 1026]; *People* v. *Herd, supra,* 220 Cal.App. 2d 847.

[13]The instruction provides: "An assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another with a deadly weapon. Any object, instrument or weapon, when used in a manner capable of producing and likely to produce death or great bodily injury, is then a deadly weapon.

"To constitute an assault with a deadly weapon, actual injury need not be caused. The characteristic and necessary elements of the offense are the unlawful attempt, with criminal intent, to commit a violent injury upon the person of another, the use of a deadly weapon in that attempt, and the then present ability to accomplish the injury. If an injury is inflicted, that fact may be considered by the jury, in connection with all the evidence, in determining the means used, manner in which the injury was inflicted, and the type of offense committed." (CALJIC 604, 2d rev. ed. 1958.)

### IV. Misconduct Issue

█ Rocha's final contention is that the district attorney committed prejudicial misconduct by asking him on cross-examination: "Isn't it also a fact, Mr. Rocha, that you smoked a marijuana cigarette in back of the Capitol Bar—?" The trial court sustained defense counsel's prompt objection, and Rocha did not answer.

Rocha contends in effect that the district attorney acted in bad faith in asking the question. In a police report Mary Sanchez reportedly stated that she had seen Rocha smoking a marijuana cigarette earlier in the evening before he knifed Piceno. The prosecutor stated his purpose in asking the question was to impeach the defendant's credibility by demonstrating that he was under the influence of marijuana and therefore unable to clearly perceive and recall the events of the evening. █ Evidence of consumption of narcotics is admissible for impeachment purposes if there is expert testimony substantiating the effects of such use. (*People* v. *Smith,* 4 Cal.App.3d 403, 411-412 [84 Cal.Rptr. 412]; *People* v. *Ortega,* 2 Cal. App.3d 884, 900 [83 Cal.Rptr. 260]; *People* v. *Buono,* 191 Cal.App.2d 203 [12 Cal.Rptr. 604].)

█ In his offer of proof the district attorney failed to produce the necessary expert testimony of the effect of marijuana on the cerebral processes in question. Nor was it established that it could be proved that the substance which Rocha smoked was marijuana or that he was under its influence at the time of the commission of the crime. The district attorney's failure in his offer of proof is not, however, conclusive evidence of bad faith on his part. His explanation of the reason for the question and his argument that the admissibility of evidence of intoxication caused by smoking marijuana should parallel the introduction of evidence of alcoholic intoxication (which requires no expert testimony) demonstrates a sincere attempt to impeach the witness.

In any event, any potential prejudice caused by the question was cured by the court's admonition to the jury. The court said: "Ladies and Gentlemen of the Jury, just before you left the courtroom for the recess, a question was asked of the defendant as to whether or not he had been smoking marijuana that day. . . .

"There was an objection to this question, and the Court has made a ruling in the absence of the jury and sustained that objection that the witness shall not answer the question and you are to disregard the question, forget that it was even asked and do not conjecture as to what the answer may or may not have been." It must be presumed that the jurors acted in accordance with the instructions and disregarded the question. (*People* v. *Seiterle,* 59 Cal.2d

703, 710 [31 Cal.Rptr. 67, 381 P.2d 947]; *People* v. *Duncan, 53 Cal.2d 803, 818 [3 Cal.Rptr. 351, 350 P.2d 103]; *People* v. *Cannedy,* 270 Cal. App.2d 669, 678-679 [76 Cal.Rptr. 24].) The question which did not go to the issue of defendant's guilt or innocence of which there was substantial evidence was not so inflammatory that any prejudicial effect could not be overcome by the instructions. (*People* v. *Duncan, supra,* 53 Cal.2d 803, 818; *People* v. *Seiterle, supra,* 59 Cal.2d 703, 710.)

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Mosk J., Burke, J., and Sullivan, J., concurred.