[Crim. No. 15576. Fourth Dist., Div. One. June 25, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL EDWARD RIVERA, Defendant and Appellant.

COUNSEL

Lynda A. Romero for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, J.**—Paul Edward Rivera appeals from the judgment entered on jury verdicts finding him guilty of assault with intent to commit rape (Pen.

Code, § 220)[1] and the unauthorized entry into an apartment (§ 602.5). ██
The principal issue is whether a court has the *sua sponte* duty to give an instruction similar to CALJIC No. 10.23[2] where the defendant is charged with assault with intent to commit rape under circumstances where the defendant reasonably believed his conduct in touching the victim was consensual sexual foreplay. We conclude under circumstances where there is substantial evidence on this issue, and the defendant defends on the theory that he reasonably believed the victim consented to his conduct, the court on its own motion must instruct accordingly. The jury must be told that if from all the evidence it has a reasonable doubt whether the defendant reasonably and in good faith believed the victim voluntarily consented to the touching it must give the defendant the benefit of that doubt and acquit him of the charge. We therefore reverse Rivera's conviction of assault with intent to commit rape. We affirm the judgment of conviction of Rivera's unauthorized entry into an apartment.

## FACTS

Since Rivera does not challenge his section 602.5 conviction we limit the following facts to the evidence on the assault.

About 2 a.m. on May 3, 1983, Sonja K. was awakened by the noise of someone going through her bedroom. She saw Rivera, the upstairs tenant, peeping in from the adjacent garage.

Rivera approached her bed. Sonja asked him what he was doing. Before she could say anything further Rivera put his hands over her mouth, told her to shut up, pushed her back on the bed and put a pillow over her face. He told her not to scream.

After Rivera removed the pillow Sonja again asked what he was doing. Rivera told her to shut up and turned her over on her stomach. He pulled down her underwear and removed her slip. He began sucking on her breasts.

Sonja tried stalling Rivera. She pleaded with him not to hurt her. She said she did not want to have sex with him. Rivera responded: "Well, you're going to anyway" and placed his fingers in Sonja's vagina.

---

[1]All statutory references are to the Penal Code unless otherwise specified.

[2]CALJIC No. 10.23 provides: "It is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge."

When Sonja heard her father enter the house, she yelled for help: "[Paul has] been trying to rape me." After Mr. K. confronted him, Rivera said: "I didn't think you were going to be here tonight" and walked out the front door.

Rivera's defense was that he did not know what he was doing because he was intoxicated and/or he believed Sonja consented to his advances. Rivera explained that he had been drinking heavily both the day before and on the day of the offense. Since Sonja had told him earlier in the day he would have to vacate his apartment he decided to talk to Sonja's father about moving out. He went to the house, saw a car in the garage, and, thinking Mr. K. was home, knocked on the door. He entered after he thought he heard someone tell him to do so. He told Sonja he wanted to talk to her father and asked if he could wait. Sonja did not say anything so he sat down on her bed. They talked and smoked some marijuana. He then kissed her, rubbed her leg and put his fingers in her vagina. Even though he wanted to have sex with her, he stopped touching her when she said she did not want to have sex with him.

As soon as Mr. K. arrived home, Sonja got off the bed and left the room. Rivera told Mr. K. he had not expected him and left.

On rebuttal Mr. K. denied telling Sonja or Rivera that he wanted Rivera to vacate the apartment.

## DISCUSSION

" '[I]n criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].)" (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913] (disapproved on another ground in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1]) quoted in *People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311].) The trial court must give instructions *sua sponte* on particular defenses and their relevance to the charged offense when it appears the defendant is relying on such a defense or there is substantial evidence supportive of such defense and the defense is not inconsistent with the defendant's theory of the case. (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 326; *People* v. *Sedeno, supra,* 10 Cal.3d at p. 716.)

Applying these standards and relying on *People* v. *Mayberry* (1975) 15 Cal.3d 143, 155 [125 Cal.Rptr. 745, 542 P.2d 1337], *People* v. *Hampton* (1981) 118 Cal.App.3d 324 [173 Cal.Rptr. 268] held in every rape case in which consent is offered as a defense the court must give CALJIC No. 10.23. (*Id.*, at p. 330; see fn. 2, *ante*.) The instruction must be given even though the defendant's testimony is the only testimony on the issue. (*Id.*, at p. 329.)

■ Where a defendant is charged with assault with intent to commit rape the court first must give CALJIC No. 9.05.5[3] telling the jury the elements of the offense which must be established. That instruction must be followed by CALJIC Nos. 9.00[4] and 10.00[5] defining assault and rape respectively.[6] ■ Thus, in an assaultive context where the defendant does not have sexual intercourse with the victim both the *assault* and the *specific intent to commit rape* must be established. Lacking requisite proof on either component, i.e., the assault *or* specific intent to commit rape, a defendant is not guilty. Since a reasonable inference can be drawn that a person does not harbor the specific intent to rape if he reasonably believes his sexual

---

[3]CALJIC No. 9.05.5 states: "Every person who assaults another with the specific intent to commit rape is guilty of the crime of assault to commit rape.

"In order to prove the commission of the crime of assault to commit rape, each of the following elements must be proved:

"1. That a female person *was assaulted*, and

"2. That such assault was made with the *specific intent to commit rape.*

"The crime of assault with intent to commit rape is complete if an assault is made and if at any moment during the assault the aggressor intends to commit rape upon the woman assaulted." (Italics supplied.)

[4]CALJIC No. 9.00 (1983 rev.) provides that to establish assault the People must prove:

"1. That an attempt was made to apply physical force upon the person of another,

"2. That such attempt was unlawful, and

"3. That at the time of such attempt the person who made the attempt had the present ability to apply such physical force . . . ."

[5]CALJIC No. 10.00 (1982 rev.) defines rape as: "1. That the defendant engaged in an act of intercourse with a person,

"2. That such other person was not the spouse of the perpetrator,

"3. That the act of intercourse was against the will of such other person, and

"4a. That the act was accomplished by means of force."

[6]We intentionally use the word "followed" in describing the court's function in instructing on assault with intent to commit rape. We adopted this language from the use note following CALJIC No. 9.05.7, Assault With Intent to Commit Sodomy. Unfortunately, the use note under CALJIC No. 9.05.5 is misleading. It provides: "*See* Instruction 9.00 (1979 Revision) for definition of assault. *See* Instruction 10.00 (1979 Revision) for definition of rape." The use note should be modified to: "*Follow* this instruction with Instruction 9.00 (1983 Revision) defining simple assault and Instruction 10.00 (1982 Revision) defining rape." In the case before us, the court also prejudicially erred by failing to give CALJIC No. 9.00 in the context of the assault with intent to commit rape charge. Although it gave the definition of simple assault it did so only to instruct on the lesser included offense of simple assault which the jury was told it could reach only if it unanimously found Rivera not guilty of the greater charge. Under such circumstances the jury was uninformed on the elements of assault in evaluating the assault with intent to commit rape.

foreplay was consensual, his belief is relevant on the specific intent issue. But regardless of his intent unless the assault is proved he cannot be found guilty of the charge. In this case, our holding rests on our analysis of this latter point.

■ An assault has three elements: (1) an attempt to apply force, (2) unlawfully, (3) where the defendant has the ability to do so. (See fn. 4, *ante.*) Here, Rivera's physical contact proved he attempted to and had the ability to apply physical force. Was his conduct unlawful?

■ Where a defendant reasonably believes the touching constituting the alleged assault was consensual he cannot be guilty because there is nothing unlawful about the physical contact between the parties. It is not a crime for consenting adults to engage in sexual foreplay privately. ■ Even though assault is a general intent crime,[7] an act committed under a mistake of fact which disproves any criminal intent is not a crime. (§ 26, subd. Three.)[8] "The effect of mistake, of course, is to negate the element of intent." (*People* v. *Scott, supra,* 146 Cal.App.3d at p. 833.) For example a boxing instructor obviously is not guilty of assault when he reasonably believes his sparring partner willingly entered the ring. If later circumstances establish another person coerced the partner to participate, the instructor may nonetheless rely on his reasonable belief of consent to negate the element of intent. A person does not act unlawfully where he commits an act

---

[7] (*People* v. *Sanchez* (1978) 83 Cal.App.3d Supp. 1, 3 [147 Cal.Rptr. 850].) In *People* v. *Windham* (1977) 19 Cal.3d 121, 130 [137 Cal.Rptr. 8, 560 P.2d 1187], certiorari denied, 434 U.S. 848 [54 L.Ed.2d 116, 98 S.Ct. 157], rehearing denied, 434 U.S. 961 [54 L.Ed.2d 322, 98 S.Ct. 495], the Supreme Court stated: "It is well settled that assault by means of force likely to produce great bodily harm is a general intent crime . . . . [Citations.]" (See also *People* v. *Wingo* (1975) 14 Cal.3d 169, 176-177 [121 Cal.Rptr. 97, 534 P.2d 1001].) The court earlier held "that only a general criminal intent, namely, the intent to attempt to commit a battery, must be demonstrated to establish assault with a deadly weapon. (*People* v. *Rocha* [1971] 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].)" (*People* v. *Parks* (1971) 4 Cal.3d 955, 959 [95 Cal.Rptr. 193, 485 P.2d 257].)
We think it interesting to note that these cases follow the court's lengthy discussion of the intent required by assault in *People* v. *Hood* (1969) 1 Cal.3d 444, 452-458 [82 Cal.Rptr. 618, 462 P.2d 370]: "It is true that in most cases specific intent has come to mean an intention to do a future act or achieve a particular result, and that assault is appropriately characterized as a specific intent crime under this definition. An assault, however, is equally well characterized as a general intent crime under the definition of general intent as an intent merely to do a violent act. Therefore, whatever reality the distinction between specific and general intent may have in other contexts, the difference is chimerical in the case of assault with a deadly weapon or simple assault. Since the definitions of both specific and general intent cover the requisite intent to commit a battery, the decision whether or not to give effect to evidence of intoxication must rest on other considerations." (*Id.,* at pp. 457-458.)

[8] "Subdivision Three (formerly subdivision Four) of Penal Code section 26 includes among persons incapable of committing a crime, 'Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent.'" (*People* v. *Scott* (1983) 146 Cal.App.3d 823, 831 [194 Cal.Rptr. 633].)

under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make the act lawful. (See CALJIC No. 4.35.) "When a person commits an act based on a mistake of fact, his guilt or innocence is determined as if the facts were as he perceived them. (*People* v. *Osborne* (1978) 77 Cal.App.3d 472, 479 [143 Cal.Rptr. 582].)" (*People* v. *Scott, supra,* 146 Cal.App.3d at p. 831.) Thus an assault is not committed where a person has a reasonable and good faith belief that the touching was consensual.

■ Whether the court errs in failing to give a particular instruction turns on whether a defendant relies on that theory as a defense or substantial evidence exists on that issue. (See *People* v. *Wickersham, supra,* 32 Cal.3d at p. 326; *People* v. *Sedeno, supra,* 10 Cal.3d at p. 716.)

■ An erroneous failure to instruct on a defense presented by substantial evidence constitutes a denial of the right to have the jury determine every material issue. (See *People* v. *Mayberry, supra,* 15 Cal.3d at pp. 157-158.) The error may not be cured by our weighing the evidence and finding it is not reasonably probable that a correctly instructed jury would have found the defendant guilty. (*People* v. *Anderson* (1983) 144 Cal.App.3d 55, 62 [192 Cal.Rptr. 409].) "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citations.]" (*People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]; italics omitted.) Failure to give the instruction is harmless only when the omitted instruction is decided adversely to the defendant by the jury in another context. (*People* v. *Anderson, supra,* 144 Cal.App.3d at p. 63; *People* v. *Sedeno, supra,* 10 Cal.3d at p. 721.)

Here, the jury decided the issue of actual consent adversely to Rivera. The determination of that issue, however, did not necessarily resolve whether Rivera reasonably believed Sonja consented to his conduct. (See *People* v. *Hampton, supra,* 118 Cal.App.3d at p. 330.) The defense of actual consent is separate from the defense of Rivera's reasonable belief. (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 158; *People* v. *Anderson, supra,* 144 Cal.App.3d at p. 63.) "The basis of the *Mayberry* holding was that the reasonable belief defense could not have been 'necessarily' rejected since the jury was never instructed such a separate defense was at issue." (*People* v. *Anderson, supra,* 144 Cal.App.3d at p. 63.) Similarly we cannot say the jury rejected the reasonable belief defense when it was never asked to consider it. ■ Rivera's testimony alone is sufficient evidence to require instructing that his reasonable and good faith belief that Sonja consented to his actions was a defense to the charge of assault with intent to commit rape. (See *People* v. *Hampton, supra,* 118 Cal.App.3d at p. 329.)

The instruction was particularly important in this case since Rivera relied on this theory as his defense. He testified that he believed Sonja was a willing participant to his advances and later argued this point to the jury. His testimony and argument on this point, however, was essentially meaningless since the jury did not have a legal framework against which it could apply his factual contentions. Accordingly, Rivera was denied the right to have the jury determine every material issue.

## DISPOSITION

The judgment of conviction of assault with intent to commit rape is reversed; the judgment of conviction of unauthorized entry is affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 13, 1984. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.