Filed 7/8/14  P. v. Deleon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS ISAAC DELEON,<br><br>    Defendant and Appellant. | H040255<br>(Santa Cruz County<br>Super. Ct. No. F22706) |

Following a jury trial, Carlos Deleon (defendant) was found guilty of one count of assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)  The trial court sentenced defendant to nine years in state prison and imposed various fines and fees.  Defendant appeals from the judgment.

Defendant's appointed counsel has filed an opening brief in which no issues are raised.  Counsel asks this court to conduct an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Counsel has declared that defendant was notified that no issues were being raised by counsel on appeal; that an independent review under *Wende* was being requested; and that defendant was notified that he could file a supplemental brief with this court.

On March 20, 2014, by letter, we notified defendant of his right to submit written argument on his own behalf within 30 days.  Defendant has filed a supplemental letter brief in which he asks this court to "reconsider the sentence of 9 years in prison to a

lesser amount of years or even probation supervision."  Defendant asserts that he did not intend to hurt the victim, and asks for a chance to "tell [his] side of the story."  We will consider defendant's letter brief pursuant to *People v. Kelly* (2006) 40 Cal.4th 106; and we will explain why we have rejected his contentions.  (*Id.* at p. 113.)

Pursuant to *Wende*, *supra*, 25 Cal.3d 436, we have reviewed the entire record and have concluded there are no arguable issues on appeal.  Pursuant to *People v. Kelly, supra*, 40 Cal.4th 106, we provide "a brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed."  (*Id.* at p. 110.)  Further, we include information about aspects of the trial court proceedings that might become relevant in future proceedings.  (*Id.* at p. 112.)

*Facts and Proceedings Below*

On June 11, 2012, the Santa Cruz County District Attorney filed an information in which defendant was charged with one count of assault with a deadly weapon.  (§ 245, subd. (a)(1).)[1]  The information contained three allegations: 1) that defendant had previously been convicted of a serious felony (§ 667, subd. (a)(1)); 2) that defendant had served a prior prison term (§ 667.5, subd. (b)); and 3) that defendant had suffered a prior serious or violent felony conviction within the meaning of section 667, subdivisions (b) through (i).

On November 9, 2012, the court conducted a *Marsden* hearing.  (*People v. Marsden* (1970) 2 Cal.3d 118.)  After hearing from defendant and defendant's counsel, the court denied defendant's request for new appointed counsel.[2]

At trial, Juan Escamilla testified that he was the owner of Wilson Tires in Soquel. In May 2012, he lived in an apartment upstairs from the shop.  Escamilla said that he had been in a relationship with defendant's mother for about 18 years; he considered

---

[1]     All unspecified section references are to the Penal Code.
[2]     It appears that defendant made a second Marsden motion, which was denied. Defendant has not provided this court with the transcript from that hearing.

2

defendant to be his stepson. In May 2012, Escamilla and defendant's mother were no longer together; the separation had not been friendly. Defendant's mother had accused Escamilla of cheating on her and lying to her.

On May 4, 2012, Escamilla had left the shop for a while. According to Jadin Burgess and Tyler Souza, both of whom worked for Escamilla, defendant arrived at the shop and asked if Escamilla was there. Burgess told defendant that Escamilla had gone out; Burgess asked if he could take a message. Defendant told Burgess to tell Escamilla to leave town as soon as possible. Burgess testified that he could sense that defendant was upset.

Escamilla returned to the shop at approximately 3:00 p.m. Escamilla saw defendant walking in his direction; they were both in the alleyway that runs beside the shop. Defendant motioned for Escamilla to follow him; defendant told Escamilla to "come in and get [his] ass kicking." At first Escamilla did not take the statement seriously. However, he realized that defendant was upset. "Probably," Escamilla told defendant to "fuck off." Escamilla stopped at the entrance to the middle bay of the shop. Escamilla could see that defendant was really angry; defendant picked up a stepstool[3] and started swinging it as he was walking toward Escamilla. Escamilla described defendant's actions as swinging the stepstool around in a complete circle.[4]

Defendant hit Escamilla with the stepstool on Escamilla's left back rib area as Escamilla turned away from defendant. Escamilla described the force used as "six or seven" on a scale of one to 10 with 10 being full force. The blow was painful and caused Escamilla to lose his balance; he fell against the tire machine. However, he was able to regain his balance. The next thing Escamilla remembered was a struggle on the ground.

---

[3]    The stepstool was described as a stepladder by the officer that collected it on the day of the incident. Burgess also described it as a stepladder. The officer testified that the stepstool/stepladder weighed 15 pounds.

[4]    Burgess described defendant's action as "spinning around."

3

Escamilla tried to gain control of defendant, but defendant soon overpowered him. Defendant got on top of Escamilla and started hitting him in the head, back, and face. Burgess saw defendant kick Escamilla, but Souza did not.

At some point, defendant got up. Escamilla was dizzy and nauseated and unable to get up. Escamilla told one of his employees to "call somebody." Burgess called 911. Paramedics treated Escamilla at the scene, but he did not go to the hospital until later that evening after he lost his balance and fell down.[5] Escamilla had jaw pain and he was bleeding from some cuts on his face and knee; he had blurred vision. At the time of trial, Escamilla still suffered from jaw problems that were a result of the altercation with defendant.

Defendant left the shop on his motorcycle. He was arrested by Sheriff's Deputy Matthew Pursley around 4:45 p.m. Defendant was driving a Honda Accord. Defendant did not have any injuries when he was arrested.

After deliberating for less than three hours the jury found defendant guilty as charged.

*Court Trial on the Prior Conviction Allegations and Sentencing*

On July 5, 2013, defendant waived his right to a jury trial on the prior conviction allegations. After the prosecutor submitted documentary evidence to prove the prior conviction allegations, the court found the allegations to be true on July 9, 2013.

Subsequently, on September 13, 2013, defendant's counsel filed a *Romero* motion. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. Counsel asked the court to strike defendant's prior serious felony conviction (the prior strike) pursuant to section 1385.

---

[5] Escamilla testified that later that evening he became nauseated and vomited, so he called a friend to take him to the hospital, where he was treated for a concussion and then released.

4

On September 27, 2013, the court struck the prior strike allegation (§ 667, subd. (b)-(i)) on the ground that not to strike it would be "unjust". The court took in to account the "entire view of the circumstances of the charged offense, [and] the nature of the relationship between [defendant] and Mr. Escamilla."[6]

Thereafter, the court denied probation and imposed the upper term of four years in state prison and a consecutive five-year term pursuant to section 667, subdivision (a)(1) for defendant's prior serious felony conviction. The court awarded defendant 308 days of custody credits. The court ordered that defendant pay a restitution fine of $2,520 and a parole revocation fine in the same amount; the court imposed various other fees.

*Defendant's Contentions*

As to defendant's request that this court "reconsider" his nine-year prison sentence, "[a] trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Jones* (2009) 178 Cal.App.4th 853, 860 (*Jones*), citing *People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) The party challenging the sentence has the burden to show it was irrational or arbitrary. Otherwise, we presume the trial court acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. A sentence will not be reversed because reasonable people might disagree. The appellate court does not substitute its judgment for the trial court's judgment. (*Jones, supra,* 178 Cal.App.4th at p. 861; *Carmony, supra* 33 Cal.4th at pp. 376–377.) We do not find that the trial court abused its discretion in this case. The trial court adequately stated its justification for imposing an upper term. The record demonstrates that the court selected the upper term in light of the fact that defendant armed himself with an object when he assaulted Escamilla (Cal. Rules of Court, rule

---

[6]     It appears that the court struck the prior prison term allegation as well.

4.421(a)(2); he was on parole when he committed the crime (Cal. Rules of Court, rule 4.421(b)(4); and defendant's prior performance on probation and parole was unsatisfactory (Cal. Rules of Court, rule 4.421(b)(5).)  The court had no discretion with respect to enhancing defendant's sentence with a five-year term for defendant's prior serious felony conviction.  (§§ 667, subd. (a)(1), 1385, subd. (b).)

As to defendant's contention that he did not intend to hurt Escamilla, we note that "[s]ection 245, subdivision (a)(1), punishes assaults committed by the following means: 'with a deadly weapon or instrument other than a firearm,' or by 'any means of force likely to produce great bodily injury.'  One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial.  [Citation.]"  (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)  The criminal intent that is required for assault with a deadly weapon is the general intent to willfully commit "an act the direct, natural and probable consequences of which if successfully completed would be the injury to another."  (*People v. Rocha* (1971) 3 Cal.3d 893, 899.)  "Given that intent[,] it is immaterial whether . . . the defendant intended to violate the law or knew that his conduct was unlawful.  The intent to cause any particular injury [citation], to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary."  (*Ibid,* fns. omitted*.*)  Swinging a 15-pound metal stepladder at a person with the force that defendant used qualifies as assault with a deadly weapon.  The fact that defendant says he did not intend to hurt Escamilla is of no consequence.

Upon our independent review of the record, we conclude there are no meritorious issues to be argued, or that require further briefing on appeal.

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P. J.


_____

MIHARA, J.