Filed 12/3/14  P. v. Lopez CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039405 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. EE907220) |
| v. | |
| MIGUEL LOPEZ, | |
| Defendant and Appellant. | |

Defendant swung a hatchet within one foot of victim and said "I'm going to kill you."  A jury convicted him of assault with a deadly weapon (Pen. Code § 245, subd. (a)(1)).[1]  On appeal, defendant asserts the evidence was insufficient to support his conviction.  In addition, defendant argues the court abused its discretion when answering questions posed by the jury, and his counsel was ineffective for failing to object to the court's answers.

### STATEMENT OF THE FACTS AND CASE

In July 2009, defendant was at the home of Zoila Rivas, where he rented a room. Adan Bermudez and his girlfriend, Charlotte Reyes and Reyes's baby granddaughter went to the home to visit Rivas.  Bermudez did not know defendant well, but had seen him previously at the Home Depot when defendant was seeking work.

---

[1] All further statutory references are to the Penal Code.

Bermudez ate food in the kitchen for an hour and a half with defendant, who drank tequila. Bermudez told defendant, "[Y]ou are drunk. You should go to sleep." Defendant told Bermudez he was fine.

Bermudez left the kitchen and sat on the couch, holding Reyes's baby granddaughter. At the time, Reyes was sitting next to him, and Rivas was sitting on a bed to Bermudez's right. Defendant came out of the kitchen, and took a hatchet from inside his pants, raised it, and threatened Bermudez stating, "I'm going to kill you." At the time, defendant was three feet away from Bermudez, and swung the hatchet three times. Bermudez was not hit by the swings, but the hatchet came within one foot of him and the baby.

Bermudez stood up and tried to calm defendant down. Defendant raised the hatchet again, and tried to strike Bermudez with it. Bermudez grabbed defendant's right hand, and the two struggled, falling to the ground. During this altercation, defendant slashed Bermudez's hand with the hatchet. Bermudez eventually took the hatchet from defendant. Bermudez then told Reyes he was going to call the police.

Bermudez left the house so as not to have another altercation with defendant, and took the hatchet with him. Defendant followed him out of the house, stating, "I'm going to finish you." Bermudez attempted to protect himself by hiding between two cars, while defendant threw rocks at him.

When police arrived at the house, they found defendant and Bermudez in the street, and Bermudez was holding the hatchet. Sunnyvale Police Officer Hastings drew his gun, and ordered Bermudez to drop the hatchet. Bermudez complied, and Officer Hastings holstered his gun.

At the time, defendant was hunched over and appeared intoxicated to the Officer. Defendant tried to grab the hatchet. Officer Hastings grabbed defendant's right arm, pulled him to the ground and handcuffed him. Four other officers at the scene tried to

2

subdue defendant. Defendant was rolling on the ground and was combative with the officers. The officers eventually restrained defendant's ankles and legs.

Defendant was charged by information with assault with a deadly weapon (Pen. Code § 245, subd. (a)(1)),[2] and resisting a peace officer (§ 148, subd. (a)(1)). Following a jury trial, defendant was convicted of assault with a deadly weapon, and acquitted of resisting a peace officer.

Defendant was sentenced to the lower term of two years in prison, and was credited with time served in state hospitals prior to trial. Defendant was released following the sentencing hearing.

Defendant filed a timely notice of appeal.

**DISCUSSION**

Defendant asserts on appeal that the evidence presented at trial was insufficient to support his conviction for assault with a deadly weapon. In addition, defendant argues the court erred in answering the jury's questions, and that his counsel was ineffective for failing to object to the court's answers.

### *Sufficiency of the Evidence*

When considering a challenge to the sufficiency of the evidence to support a criminal conviction or enhancement, we determine whether there is substantial evidence. Substantial evidence is reasonable, credible, and of solid value such that a reasonable trier of fact could make the necessary findings beyond a reasonable doubt. In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. Rather, we review the whole record in the light most favorable to the judgment, we draw all reasonable inferences from the evidence that

---

[2] The parties stipulated that for the charge of assault with a deadly weapon, the prosecution would rely only on the evidence of defendant's swinging the hatchet at Bermudez while he was on the couch holding the baby, and not defendant's slash of Bermudez's hand with the hatchet.

3

support it, and we presume the existence of every fact the trier of fact could reasonably deduce from the evidence.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319-320; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Section 245, subdivision (a)(1) prohibits "an assault upon the person of another with a deadly weapon or instrument other than a firearm . . . ."  "Since 1872, the Penal Code has defined assault as 'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' (Pen. Code, § 240.)" (*People v. Chance* (2008) 44 Cal.4th 1164, 1167 (*Chance*), fn. omitted.)  " 'The "violent injury" here mentioned is not synonymous with "bodily harm," but includes any wrongful act committed by means of physical force against the person of another. . . .' [Citation.]" (*People v. Rocha* (1971) 3 Cal.3d 893, 899-900, fn. 12 (*Rocha*).)  " 'In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.' [Citation.]" (*Id.* at p. 899, fn. 12.)

The present ability element "is satisfied when 'a defendant has attained the means and location to strike immediately.' [Citations.]  In this context, however, 'immediately' does not mean 'instantaneously.'  It simply means that the defendant must have the ability to inflict injury on the present occasion." (*Chance, supra*, 44 Cal.4th at p. 1168, fn. omitted.)  "[A]ssault with a deadly weapon is a general intent crime." (*Rocha, supra*, 3 Cal.3d at p. 899.) "[T]he criminal intent which is required for assault with a deadly weapon . . . is the general intent to willfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." (*Ibid.*)  "The pivotal question is whether the defendant intended to commit an act likely to result in . . . physical force, not whether he or she intended a specific harm." (*People v. Colantuono* (1994) 7 Cal.4th 206, 218 (*Colantuono*), fn. omitted.)

The evidence at trial amply supports defendant's conviction of assault with a deadly weapon.  Specifically, Bermudez testified defendant removed a hatchet from his

4

pants and raised it, telling Bermudez, "I'm going to kill you." Defendant swung the hatchet three times, and Bermudez covered himself and the baby for protection. Neither Bermudez nor the baby was hit with the hatchet, but the hatchet came within one foot of them. Swinging a hatchet causing it to come within one foot of a person, while threatening to kill the person, clearly constitutes an assault with a deadly weapon under section 245, subdivision (a)(1). Here, defendant "willfully committed an act [swing a hatchet at Bermudez and the baby] that by its nature will probably and directly result in injury to another, i.e., a battery." (*Colantuono, supra,* 7 Cal.4th at p. 214.)

We find defendant's conviction for assault with a deadly weapon is supported by substantial evidence.

### Jury Questions

Defendant asserts the court erred in answering the jury's questions during deliberations, because it referred the jury to instructions previously given rather than answering the questions directly.[3]

During deliberations, the jury presented the following note with questions to the trial court: "Clarification of the legal definition of assault & if these scenarios are defined as assault. [¶] Scenario 1: Is holding hatchett [*sic*] above head & makes [*sic*] a downward move to victim within striking distance but never intended to hit the victim. Is this considered assault? [¶] Scenario 2: Is holding hatchett [*sic*] above head & waving it but not intentionally moving the hatchett [*sic*] toward victim considered assault? If he is waiving the hatchet standing 1-2 ft from victim?"

---

[3] The Attorney General asserts defendant forfeited the issue on appeal, because he did not object to the court's answers at the time they were given in the trial court. In anticipation of this argument, defendant asserts his counsel was ineffective for failing to object to the court's answers. We need not consider these issues, because we find the court's answers to the jury's questions were proper in this case.

The trial court responded as follows: "It is up to the jury alone to decide what happened, and to apply the law as I instruct you to the facts as you find them. I refer you to CALCRIM 875, which defines the legal elements of the crime of assault with a deadly weapon."

The duty of a trial judge to answer the jury's questions during deliberations is set forth in section 1138 provides in relevant part: "After the jury have retired for deliberation, . . . if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given . . . ."

Our Supreme Court discussed the trial court's duty under section 1138 in *People v. Beardslee* (1991) 53 Cal.3d 68, 97, stating: "The court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky. [Citation.]"

The court in *People v. Moore* (1996) 44 Cal.App.4th 1323, addressed this point further, and explained that the trial court is not required to elaborate "on the standard instructions in every instance. When the original instructions are full and complete, the trial court has discretion to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Jury questions can present a court with particularly vexing challenges. The urgency to respond with alacrity must be weighed against the need for precision in drafting replies that are accurate, responsive, and balanced. When a question shows the jury has focused on a particular issue, or is leaning in a certain direction, the court must not appear to be an advocate, either

6

endorsing or redirecting the jury's inclination. Although comments diverging from the standard should be embarked on with care, a trial court must do more than figuratively throw up its hands and tell the jury it cannot help. It must consider how it can best aid the jury and decide whether further explanation is desirable, or whether the reiteration of previously given instructions will suffice. [Citation.]" (*Moore, supra*, at p. 1331, citing *People v. Beardslee, supra*, 53 Cal.3d at p. 97.)

Here, the record shows the court considered the jury's questions, and properly answered them, fulfilling its duty under section 1138. In answering the questions of whether particular factual scenarios constituted an assault, the court properly referred the jury to CALCRIM No. 875, which defines assault with a deadly weapon as follows: "1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person. [¶] Someone commits an act willfully when he or she does it willing or on purpose."

Here, the questions posed by the jury presented two distinct issues. The first was seeking a clarification of the legal definition of assault. To this the court responded by directing the jury to CALCRIM No. 875, the previously given instruction defining the elements required for an assault with a deadly weapon. The second portion of questions asked the court whether two separate factual scenarios from the case constituted an assault. These questions presented an abdication of the jury's role as fact finder, improperly shifting the responsibility to the court. The court properly directed the jury to the instruction defining assault with a deadly weapon.

7

The record shows that the court considered the jury's questions, and how to assist them in their inquiries.  Moreover, the court's answer was a proper statement of the law, and did not diverge from the standard jury instructions in this case.  (*People v. Beardslee, supra*, 53 Cal.3d at p. 97.)  The court did not err in answering the jury's questions, and adequately fulfilled its duty under section 1138.

## DISPOSITION

The judgment is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

MÁRQUEZ, J.

9