[Crim. No. 20756. First Dist., Div. Three. Apr. 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ALLEN HAMPTON et al., Defendants and Appellants.

COUNSEL

George L. Schraer, Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Alice V. Collins, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCOTT, J.—Richard Hampton and his codefendant Eugene Lewis Pinchback were convicted of violation of Penal Code section 261, subdivision 3 (rape by threats of force). Pinchback was additionally convicted of violation of Penal Code section 288a, subdivision (c) (unlawful oral copulation). The sole issue on appeal is whether the court erred in failing to instruct *sua sponte* on the defense of a reasonable and good faith belief that consent had been given to the sexual acts. (*People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337].)

On May 2, 1979, while riding in an automobile in Palo Alto, appellants saw the victim, a young female adult, roller skating. Appellants introduced themselves to the victim. They talked for about 10 minutes. It developed that they had mutual acquaintances at San Jose State University. Ultimately the parties exchanged telephone numbers and addresses, and discussed the possibility of going to a party. Later in the day Hampton called the victim, who invited appellants to her apartment.

Once inside the victim's apartment Hampton noticed several magazines on a coffee table and examined them. One of the magazines was Players, a black version of Playboy; another was Essence, a magazine for black women. At this point the testimony of Hampton as to the occurrences in the victim's apartment, and the victim's testimony differ substantially. Pinchback did not testify.

The victim testified that the magazines were for her boyfriend, and she had no discussions with appellants about their contents. Shortly after appellants' arrival the topic of the evening party was raised. She declined to go, saying that even if she were to go she would not change her clothes in front of appellants. Hampton then placed his hand on her thigh. This frightened her. She got up and went to the door, opened it, and asked them to leave. Hampton approached her, slammed the door, and locked it. He then grabbed her by the wrists and repeatedly told her, "Don't make me do anything." She turned to Pinchback and asked him to tell Hampton not to hit her, which Pinchback did.

Hampton pushed her toward the bed while still holding her wrists. She went unwillingly. Hampton told her to get undressed and she complied because she was scared. While Hampton was raping the victim, Pinchback came to the side of the bed and told her to orally copulate him. Again, she complied because she was scared. After Hampton had completed raping the victim, Pinchback also raped her.

After the assaults, in an effort to calm herself so that she could escape, the victim talked with appellants for 10 to 15 minutes. Pinchback then ordered her into the bathroom. She followed him because she was scared. In the bathroom Pinchback forced the victim to orally copulate him again. Shortly thereafter, she ran from the apartment.

Hampton testified that the victim told him to continue looking at the magazines on the coffee table when he appeared to lose interest in them. Shortly thereafter, the subject of going to the evening party was raised. The victim indicated that she wanted to go to the party, but was concerned about changing her clothes in the presence of appellants, as she had a studio apartment. When Hampton suggested she change in the bathroom, she went to the apartment door and asked appellants to leave. She called appellants "chumps." Hampton took exception to the word "chumps" and grabbed her wrists so that he could give her some "constructive criticism." He led her by the wrists from the doorway to the bed, where he sat her down. Hampton then discussed the subject of respect with the victim and she appeared to be sorry for what she had said. They then began kissing. Ultimately they engaged in an act of sexual intercourse. The intercourse was described by Hampton in a manner as to suggest that it was consensual. At the conclusion of the intercourse the victim told Pinchback that "he [Hampton] does it pretty good."

Hampton also testified that at some point he placed his hand on the victim's leg, but this was not immediately prior to her going to the door and asking them to leave. He testified that he insisted she change clothes in his presence, that she was unwilling to do so, and that she was nevertheless willing to have sex with him. Hampton further testified that neither he nor Pinchback threatened the victim, that she was never afraid, and that she did not resist his sexual advances. Hampton further testified that he was unaware of any sexual activity between Pinchback and the victim. He did not recall whether Pinchback placed his arm around the victim when he, Hampton, put his hand on her leg. He testified that he also did not recall whether Pinchback caused the victim to orally copulate him while he, Hampton, was having intercourse with her. Finally, he testified that she was "coming on" to Pinchback as well as to him by sitting close to him when they were talking.

Hampton was arrested the day following the incident. He denied to the arresting officer any sexual contact with the victim.

Although the jury was instructed pursuant to CALJIC No. 10.01 (1979 rev.; Forcible Rape—Resistance Prevented by Threats), neither appellant requested CALJIC No. 10.23. That instruction provides: "It is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge."

In *People* v. *Mayberry, supra*, 15 Cal.3d 143, 155, the court held that a defendant who entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to engage in sexual intercourse does not possess the requisite intent for a rape conviction. While the burden is on the defendant to prove he had a bona fide and reasonable belief that the prosecutrix consented to sexual intercourse, he is only required to raise a reasonable doubt as to whether he had such a belief (at p. 157).

Relying on *Mayberry*, appellants contend that the trial court erred in failing to instruct the jury *sua sponte* pursuant to CALJIC No. 10.23. In addition, appellant Pinchback contends the court should also have

given *sua sponte* the similar instruction related to oral copulation, CALJIC No. 10.40.1. Appellants theorize that a jury in a rape case could simultaneously find that the prosecutrix did not consent to sexual intercourse, but that the alleged perpetrator had a reasonable and good faith belief that she did consent.

■ Even in the absence of a request, the trial court must instruct on the "general principles of law governing the case." The latter phrase means those principles of law commonly or closely and openly connected with the facts of the case before the court. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 681 [160 Cal.Rptr. 84, 603 P.2d 1].) ■ The duty to give instructions *sua sponte* on particular defenses and their relevance to the charged offense arises only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].)

Appellants contend there is substantial evidence supporting the reasonable belief defense. In response, the People urge that before the *Mayberry* instruction need be given, there must appear to be evidence of equivocal behavior on the part of the victim from which the defendant could reasonably believe that the sexual activity was consensual. Indeed, *Mayberry* does state: "It appears from her [the victim's] testimony that her behavior was equivocal. Although she did not want [the defendant] to think she was consenting, her 'act' and admitted failure physically to resist him after the initial encounter or to attempt to escape or obtain help might have misled him as to whether she was consenting." (15 Cal.3d at p. 156.) However, the court prefaced this comment with the statement that the testimony of the defendant alone "could be viewed as indicating that he reasonably and in good faith believed that [the victim] consented to ... the subsequent sexual intercourse." The "equivocal conduct" simply provided *additional* support for the giving of the instruction.

■ *Mayberry* compels the conclusion that, by itself, the testimony of a defendant in a rape case that the prosecutrix consented can be sufficient to require the giving of the reasonable belief instruction. Moreover, the reasonable belief in consent defense is not inconsistent with the defense of actual consent; to the contrary, the defendant who relies on the defense of consent necessarily also relies on the defense that he had a reasonable and good faith belief that there was consent.

We conclude that in every case wherein consent is offered as a defense to a charge of rape or unlawful oral copulation, the court must instruct the jury in the language of CALJIC Nos. 10.23 and 10.40.1.

■ It cannot be said that the error was harmless in that the jury by its verdict resolved the issue against appellant. As stated in *Mayberry* (at p. 158), "while the verdicts impliedly found that the victim did not consent . . . to the subsequent intercourse, no claim is made, nor does it appear, that the jury by its verdicts in the light of the instructions given necessarily rejected the evidence supporting [defendant's] assertion that he believed reasonably and in good faith that she had so consented. We conclude, accordingly, that under the rule in *Modesto* [*People* v. *Modesto* (1963) 59 Cal.2d 722 (31 Cal.Rptr. 225, 382 P.2d 33)], reaffirmed in *Sedeno*, the erroneous refusal to give the mistake of fact instructions was prejudicial." Here, too, the failure to give *sua sponte* the mistake of fact instructions in the case of appellant Hampton was prejudicial.

■ With regard to appellant Pinchback, there is no substantial evidence that he entertained a reasonable though mistaken belief that the victim was consenting to the act of sexual intercourse or of oral copulation. As noted before, he did not testify. The testimony of the victim clearly indicates that she did not consent to the sexual attack. There was nothing about her conduct that was "equivocal" which would reasonably lead him to believe that she was consenting. The testimony of Hampton was of no assistance to Pinchback. Although Hampton's testimony was sufficient to require a mistake of fact instruction as to the crimes charged against him, Hampton denied observing any sexual conduct between Pinchback and the victim. Therefore, there is no basis in Hampton's testimony contending that there was consent to his sexual intercourse from which it can be inferred that the victim consented to Pinchback's sexual assault. There was no error in failing to give CALJIC Nos. 10.23 and 10.40.1 as to Pinchback.

Appellant Pinchback correctly contends that the trial court erred in failing to include conduct credits in its abstract of judgment in accordance with Penal Code section 2900.5, subdivision (d). The Department of Corrections will administratively compute the additional credits when this court issues its remittitur. (*People* v. *Sage* (1980) 26 Cal.3d 498, 509 [168 Cal.Rptr. 280, 611 P.2d 874]; *People* v. *Villa* (1980) 109 Cal.App.3d 360, 369 [167 Cal.Rptr. 265].)

Judgment as to appellant Hampton is reversed; judgment as to appellant Pinchback is affirmed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied May 22, 1981, and the petitions of appellant Pinchback and respondent for a hearing by the Supreme Court were denied July 22, 1981.