[Crim. Nos. 5798, 6270. Fifth Dist. May 26, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL O. ANDERSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Gabriel C. Vivas, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, W. Scott Thorpe and Gary A. Binkerd, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN (G. A.), P. J.—Michael Anderson appeals from a judgment entered on a jury verdict finding him guilty of two counts of forcible rape

(Pen. Code, § 261, subd. 2), two counts of forcible oral copulation (Pen. Code, § 288a, subd. (c)), and two counts of false imprisonment (Pen. Code, § 236), a lesser included offense within the charged offense of kidnaping (Pen. Code, § 207). He appeals, urging error in the failure to give certain instructions.

## FACTS

On January 4, 1981, a Sunday, two girls, 14-year-old C. and 15-year-old K., exited the Fashion Fair shopping center at approximately 5 p.m. The girls took a bus which they believed would take them close to the residence of K.'s sister. When the bus made an unanticipated turn, the girls got off. Having spent their money, they began hitchhiking.

Appellant drove up and offered the girls a ride. C. got in the back seat and K. took the front seat. Appellant's four-year-old son, Joshua, was in the back seat.

Soon after he commenced driving, appellant began to rub K.'s leg. He then grabbed one of her breasts in a rough fashion. C. asked appellant to pull over and let them out, but appellant refused and kept driving. C. began hitting appellant in an attempt to divert his attention from K. Appellant ordered C. to get into the front seat. She refused, but appellant continued to squeeze K.'s breast in a manner which caused her great pain. At K.'s behest, C. moved to the front seat so that appellant would cease his use of force. C. sat by the passenger door.

As he drove, appellant pulled his pants down and ordered K. to orally copulate him, pushing her head onto his lap. K. complied with appellant's order. At about that time, appellant stated that he had a gun. He also warned C. to think about what he would do to K. if she jumped out of the car. Appellant continued driving down city streets with moderate traffic, stopping at several traffic lights.

As they drove, appellant ordered the girls to disrobe. They did so because they feared that appellant might employ his gun. Appellant placed their clothes on the floor between the driver's seat and the door.

Eventually, appellant pulled into a vacant parking lot near Fresno Airport. It was dark.

Appellant thereupon engaged in several sex acts with the two girls. He ordered the girls to orally copulate him. After 10 minutes, appellant ordered

C. to have intercourse with him and told K. to continue orally copulating him. However, after five minutes, he could only achieve slight penetration of C.'s vagina. He ordered the girls to switch positions. The girls complied, and appellant had intercourse with K.

When appellant finished having intercourse with K., he gave the girls their shirts and told them they could put them on, but he did not allow them to put their pants on. Appellant insisted on taking the girls to K.'s sister's apartment. After five minutes, he allowed them to put on their pants.

When appellant arrived at K.'s sister's apartment, he stopped and told K. to "[g]ive me a titty shot." She pulled up her shirt and bra and he put his mouth on her breast. Appellant then told C. to do the same, and she complied. As the girls were leaving, appellant warned them that if they spoke to the police he would come back and kill them. The girls went into K.'s sister's house where they cleaned themselves. They did not tell K.'s sister what had happened. Instead, they went to a neighbor's apartment and told him of the events.

That night C. told her mother about the evening's events. C.'s mother told K.'s mother the following day. The girls were taken to a hospital that day. They were medically examined. The police interviewed them.

Appellant's defense was consent. The sole defense witness was Joshua who, by the time of trial six months after the events, had just turned five years of age. He testified in a halting manner concerning the evening in question.

He remembered that his father touched the chest of the girl seated in front. When asked what she did when she was touched, Joshua responded, "nothing." He said the girl in the back seat responded by hitting his father once, but that she laughed when she did so.

Joshua indicated that the girl in the front seat never put her face near his father's lap.

Joshua recalled that the car stopped at the airport. The girl in the back seat got in the front seat after the car stopped.

It was Joshua's testimony that neither girl put her face near his father's lap while they were at the airport. Joshua was sure that the girls took off their pants but never took off their tops. After they took off their pants "they got on top of daddy." They did so at the same time.

Joshua's direct testimony concluded:

"Q. Did your daddy ever say he had a gun?

"A. Hmm, no.

"Q. Did your daddy make the girls go with him?

"A. Hmm, no.

"Q. Did he make them get on top of him at the airport?

"A. No. No."

On cross-examination, Joshua denied that his father touched the girls' breasts when he dropped them off. He also testified that when the two girls were on top of appellant at once, one was sitting and the other was lying down. Finally, Joshua revealed that he had talked with his "mommie" before trial about what he was going to say in court.

## DISCUSSION

The trial court ruled that the testimony of Joshua was sufficient to raise an issue as to actual consent, and the jury was properly instructed on that defense. By its verdict, the jury obviously resolved the issue of actual consent against appellant.

■ Appellant also relied upon the separate defense that he reasonably believed the victims voluntarily consented to engage in sexual relations. He requested CALJIC No. 10.23[1] in aid of the defense.

The trial judge refused to give the instruction, stating: "Now, during the discussions in chambers, the Court declined to give instructions based on *People* versus *Mayberry,* as to *all three* charges, that are instructions to the effect that if the Defendant had a bona fide and good faith and reasonable belief that there was consent to the acts, that that would be a defense. And those instructions were refused on the basis that there is no evidence of good faith belief, one way or the other. That the Defense has the burden of

---

[1]CALJIC No. 10.23 provides: "It is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge."

proof to raise a reasonable doubt on this issue. And having offered no evidence, there is no factual dispute for the jury to resolve.

"And I have considered the testimony of the boy, who may be helpful on the charges, but who did not help us with any testimony as to what the Defendant's belief may or may not have been." (Italics added.)

*People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337] is the authority for CALJIC No. 10.23. That case directly holds that a reasonable, good faith belief that the victim voluntarily consented to engage in sexual intercourse is a defense to a charge of forcible rape. (*Id.*, at p. 155.) *Mayberry* also holds that while the burden is on the defendant to prove he had a bona fide and reasonable belief that the prosecutrix consented to sexual relations, he is only required to raise a reasonable doubt as to whether he had such a belief. (*Id.*, at p. 157.)

In *People* v. *Hampton* (1981) 118 Cal.App.3d 324 [173 Cal.Rptr. 268], the court held that a jury could simultaneously find that a victim of rape did not consent to sexual relations but that the alleged perpetrator had a reasonable and good faith belief that the victim did consent. (*Id.*, at pp. 329-330.) The court further stated that ". . . the defendant who relies on the defense of consent necessarily also relies on the defense that he had a reasonable and good faith belief that there was consent." (*Id.*, at p. 329.)

In *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1], the court teaches: "If defendant proffers evidence enough to deserve consideration by the jury, i.e., 'evidence from which a jury composed of reasonable men could have concluded that there was diminished capacity sufficient to negate the requisite criminal intent' [citation], the court must so instruct. A trial court should not, however, measure the substantiality of the evidence by undertaking to weigh the credibility of the witnesses, a task exclusively relegated to the jury. If the evidence should prove minimal and insubstantial, however, the court need not instruct on its effect. [Citations.] In other words, '[t]he court should instruct the jury on every theory of the case, but only to the extent each is supported by substantial evidence.' [Citation.] We likewise note that 'Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.' [Citations.]" (Fn. omitted.)

Summarizing prior authority, the court also said: "We went on to warn that ' "[t]he fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citations.] That is a question within the exclusive province of the jury." ' (Italics omitted.) (*Id.*) 'As an obvious corollary, where there is "no substantial evidence

of diminished capacity" the court does not err in refusing to give instructions based on that defense.' [Citation.]" (*Id.*, at p. 684.)

Respondent argues that *Mayberry* and *Hampton* are distinguishable because in each of those cases the defendant testified relative to the consent issue. The purported distinction, however, does not pass muster. The flaw in the argument is that it assumes a person's state of mind can only be shown by direct evidence. It is elementary that a defendant's state of mind is most often shown through circumstantial evidence which often prevails over the direct testimony of the defendant to the contrary.

We fail to perceive how Joshua's testimony furnished sufficient circumstantial evidence of actual consent to require an instruction on that issue, but failed to establish sufficient circumstantial evidence to require an instruction on appellant's reasonable good faith belief. Joshua essentially testified to facts from which it could be reasonably concluded that the girls appeared to consent to the sexual acts and willingly remained in appellant's presence. In addition, C. did in fact move from the rear seat, a place of safety, to the front seat. She was seated by the door on the passenger side and she did not attempt to escape though the vehicle was traveling on city streets, in moderate traffic, and stopped at a number of traffic lights.

We are forced to the conclusion that it was error to refuse to give CALJIC No. 10.23.

We next turn to the issue of prejudice. In *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913], the court reaffirmed the holding in *People* v. *Modesto* (1963) 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33],[2] stating: "There a majority of this court held that a defendant has a constitutional right to have the jury determine every material issue presented by the evidence; that an erroneous failure to instruct on a lesser included offense constitutes a denial of that right; and that such error cannot be cured by weighing the evidence and finding it not reasonably probable that a correctly instructed jury would have convicted the defendant of the lesser included offense. [Citation.] We adhere to that portion of the decision." (*Id.*, at p. 720.)

Thus, as strongly as this court may feel that it is reasonably probable that a correctly instructed jury would have convicted the defendant and that the omitted instruction would have made no difference whatsoever in the result reached, we are bound by the above rules established by our Supreme Court

---

[2]Both *Sedeno* and *Modesto* are disapproved on an unrelated point in *People* v. *Flannel*, *supra*, 25 Cal.3d 668, 684, footnote 12.

in *Modesto* and *Sedeno*. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Essentially, this court is precluded from affirming the convictions on the ground that it is not reasonably probable that the error contributed to the result.

The only analysis permitted is to determine if the omitted issue was decided adversely to appellant by the jury in another context. (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 721.) As was stated in *People* v. *Stewart* (1976) 16 Cal.3d 133, 141 [127 Cal.Rptr. 117, 544 P.2d 1317], quoting in part from *Sedeno*: "[A] failure to instruct where there is a duty to do so can be cured if it is shown that 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.'"

While the jury decided the issue of actual consent adversely to appellant, that determination does not necessarily decide the issue of whether appellant reasonably believed the victims consented. The two defenses are separate. *People* v. *Mayberry, supra,* 15 Cal.3d 143, is in point. There the trial court failed to instruct on the defense of reasonable belief as to consent. Despite the fact that the jury rejected the defendant's consent defense, the *Mayberry* court held that there was reversible error. (*Id.,* at pp. 157-158.) The basis of the *Mayberry* holding was that the reasonable belief defense could not have been "necessarily" rejected since the jury was never instructed that such a separate defense was at issue. As appellant notes, the jury could not have implicitly rejected the reasonable belief defense when they were never asked to consider it. (See also *People* v. *Hampton, supra,* 118 Cal.App.3d 324, 330.)

Accordingly, reversal of the two counts of forcible rape is required.

Finally, we turn to the oral copulation and false imprisonment convictions.

■ Appellant requested CALJIC No. 10.40.1.[3] As will be noted, the instruction is a paraphrase of CALJIC No. 10.23, except the named offense

---

[3]CALJIC No. 10.40.1 provides: "It is a defense to a charge of forcible oral copulation that the defendant entertained a reasonable and good faith belief that the other person voluntarily consented to engage in oral copulation. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed such other person voluntarily consented to engage in oral copulation, you must give the defendant the benefit of that doubt and acquit him of said charge."

We note that the use note to No. 10.40.1 provides that the instruction should not be given if the victim was under 18 years of age. (CALJIC No. 10.40.1 (4th ed. 1979) p. 439.) The use note is in error. The defense of reasonable belief as to consent lies in a forcible oral copulation prosecution regardless of whether the victim is an adult or a minor. At oral argument respondent conceded this point.

is forcible oral copulation. Respondent has presented no reason distinguishing the forcible oral copulation counts from the rape convictions. Accordingly, we are also required to reverse the two counts of forcible oral copulation. (See *People* v. *Hampton, supra,* 118 Cal.App.3d 324, 330.)

■ Appellant was also convicted of two counts of false imprisonment, lesser included offenses within the charged offenses of kidnaping. (See *People* v. *Apo* (1972) 25 Cal.App.3d 790, 796 [102 Cal.Rptr. 242].) At oral argument, the People conceded that a reasonable and good faith belief that the victim consented to the defendant's conduct is a defense to the crime of false imprisonment. We see no reason to reject this concession in light of the fact that a reasonable and good faith belief as to consent is a defense to kidnaping.[4] (*People* v. *Mayberry, supra,* 15 Cal.3d 143, 155.)

Accordingly, we hold that the trial court erred by failing to instruct *sua sponte* that a reasonable and good faith belief as to consent was a defense to the lesser included offense of false imprisonment. (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 716; *People* v. *Hampton, supra,* 118 Cal.App.3d 324, 330.) For the reasons heretofore stated, under the rule of *Modesto,* reaffirmed in *Sedeno,* the failure to give the mistake of fact instruction requires the reversal of the false imprisonment convictions.

In light of our holdings on the instructional points, we need not reach the alleged sentencing errors.

The judgment is reversed.

Franson, J., and Hanson (P. D.), J., concurred.

---

[4]CALJIC No. 9.28 provides: "It is a defense to a charge of kidnaping that the defendant entertained a reasonable and good faith belief that the person alleged to have been kidnaped voluntarily consented to accompany the defendant and to the movement involved in the alleged kidnaping. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed that the person alleged to have been kidnaped voluntarily consented to accompany the defendant and to the said movement, you must give the defendant the benefit of that doubt and acquit him of said charge."