[No. C001293. Third Dist. July 31, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT RHOADES, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV and V.

## COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and David Y. Stanley, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

DEEGAN, J.* —In the published portion of this opinion we consider and reject the claim that a defendant charged with forcible oral copulation is always entitled to a sua sponte instruction concerning his reasonable belief that the victim consented whenever a defense of consent is presented. Instead, we hold that there must be some evidence supporting a claim of mistake of fact before such duty arises.

Defendant was convicted of forcible oral copulation (Pen. Code, § 288a, subd. (c)),[1] residential robbery (§ 211; former § 213.5; see now § 212.5), and kidnapping (§ 207), and was found to have used a knife in committing each crime (§ 12022, subd. (b)). Defendant was sentenced to a total term of 10 years in state prison.

He appeals, arguing reversal is warranted because the court failed to instruct the jury, on its own motion, that it should acquit him if he had a reasonable and good faith belief that the victim consented to the act of oral copulation. (Former CALJIC No. 10.40.1.)

In the unpublished portion, we consider defendant's remaining contentions. He contends the trial court erred when it instructed the jury that his pretrial falsehoods or misleading statements could be considered as evidence of a consciousness of guilt (CALJIC No. 2.03) and that the testimony of a witness who willfully testifies falsely may be rejected. (CALJIC No. 2.21.) Finally, he asserts that, should we reject his other contentions, he is entitled to an additional day of presentence custody credit and the restitution fine imposed (Gov. Code, § 13967) must be vacated. We find the sentencing contentions meritorious, but reject the remaining ones. We shall modify the judgment accordingly and affirm it as modified.

---

* Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

[1] All further statutory references are to the Penal Code unless indicated otherwise.

## FACTS

The victim, Sharon T., testified that on August 21, 1985, she was in her apartment in Marysville. At around 12:30 p.m. she was dressed in her pajamas when she heard a knock at the door. She looked out the window but did not see anyone. She donned a robe and answered the door but no one was there.

A few minutes later, the phone rang. The caller was defendant, whom Sharon had known for several years because he occasionally cut her hair. He asked if he could come over to ask her some questions about the restaurant at which she worked. He said he was working for a company that was considering opening a restaurant close to the one where Sharon worked. Sharon told defendant he could come over.·

After defendant arrived, Sharon and he began to talk in the living room. Sharon was still dressed in pajamas and a robe. After a while, defendant moved next to Sharon on the couch, pulled her head back· by the hair and told her he was wanted for robbery and needed a place to stay for the next 24 hours. He held a knife to her throat and said he was going to stay with her.

Defendant asked her how much money she had in the house; she said she had about $50. He took the money from her as well as her automatic bank teller card and put them into a red shaving kit.

Defendant then took Sharon by the arm and led her into the bedroom, where he handcuffed her arms behind her back. First he removed his own clothes, then hers. He had some difficulty disrobing Sharon because of the handcuffs, so he removed one and then took off her robe. He then had her orally copulate him, threatening to kill her if she refused. He ejaculated in her mouth.

At the conclusion of this activity, defendant and Sharon dressed themselves. Defendant took out a handkerchief and wiped down surfaces he had touched inside the apartment, telling Sharon "people who make mistakes get caught and people who don't dont'." Defendant told Sharon they were going to drive to "river bottoms" and that if she got any ideas about running away, he would kill her; he still had the knife in his hand.

Defendant removed the remaining handcuff and reiterated his warning about running away, telling Sharon he had a .22 Derringer in his pocket and would shoot her if she tried to escape. Sharon got her car keys and gave

them to defendant. They walked to the car. Defendant drove while Sharon rode in the passenger seat.

They stopped at a Foster's Freeze where defendant purchased two cold drinks for them. He returned to the car and began driving again.

Defendant slowed the car to pass through a tunnel; as he did so, he also began to open a package of cigarettes. Sharon seized this opportunity to attempt an escape. She opened the car door and jumped out. Defendant grabbed her arm and tried to pull her back into the car, saying, "I told you not to try to get away from me, you little bitch" and, "I'm going to kill you now." Sharon and defendant struggled; Sharon finally jerked herself free and fell to the ground. Defendant backed the car up and attempted to drive over her, but Sharon was able to evade the car; she rolled away, regained her footing, and ran towards a nearby welfare office.

Once inside the welfare office, Sharon asked someone to call police. When police arrived, they took Sharon to the hospital because of the injury she sustained to her leg when she escaped from the car.

Defendant was eventually arrested two days later in his pickup truck. The shaving kit and a knife similar to that described by Sharon were found inside at that time.

Predictably, defendant's testimony was somewhat different from Sharon's. He testified that he called Sharon and asked if he could visit her, to which she agreed. He asserted they had had a dating and sexual relationship of intermittent frequency but longstanding duration. He explained they had been together the night before the incident leading to the charges against him, and they had made love several times.

Defendant said that when he was at Sharon's apartment on August 21, mutual oral copulation occurred by consent. He said that after they had sex, Sharon became very angry with him when he told her he was planning to take a mining job in the mountains because she felt he never had intended to have a serious relationship with her, that he was just using her. After an argument in the apartment, they went for a drive, during which they continued arguing. The drive ended when Sharon jumped out of the car in front of the welfare office threatening to have him arrested.

Defendant returned Sharon's car to her apartment and drove away in his pickup truck. He denied taking a bank card or any money from Sharon and denied ever owning handcuffs. The handcuffs, money and bank card were never recovered.

## DISCUSSION

### I

■ As noted above, the thrust of defendant's defense was that he and Sharon engaged in consensual mutual oral copulation, and that she only filed a report with police out of anger because he had been taking advantage of her. He expressly tendered only the consent defense. His counsel did not request an instruction explaining to the jury that if they found he had a *reasonable belief* Sharon had consented to the oral copulation, that would be a defense to the charge. (CALJIC No. 10.40.1.)

He contends on appeal the trial court had a sua sponte duty to give this instruction to the jury on the theory that, by offering a consent defense, he necessarily also tendered a defense based upon his reasonable belief in consent. Although this argument finds some support in case law, we are persuaded that the better reasoned decisions reject it.

■ The duty to instruct sua sponte on particular defenses arises only if it appears the defendant is relying on such a defense or if there is substantial evidence to support such a defense, and it is not inconsistent with the defendant's theory of the case. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 326 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Sanchez* (1982) 131 Cal.App.3d 718, 735-736 [182 Cal.Rptr. 671]; *People* v. *Hampton* (1981) 118 Cal.App.3d 324, 329.)

■ The consent defense differs from the reasonable belief in consent defense. (*People* v. *Romero* (1985) 171 Cal.App.3d 1149, 1155 [215 Cal.Rptr. 634].) "Where the defendant claims that the victim consented, the jury must weigh the evidence and decide which of the two witnesses is telling the truth." (*Ibid.*) The defense of a reasonable belief in consent by contrast, "permits the jury to conclude that both the victim and the accused are telling the truth. The jury will first consider the victim's state of mind and decide whether she consented to the alleged acts. If she did not consent, the jury will view the events from the defendant's perspective to determine whether the manner in which the victim expressed her lack of consent was so equivocal as to cause the accused to assume that she consented where in fact she did not." (*Id.,* at pp. 1155-1156, citing *People* v. *Mayberry* (1975) 15 Cal.3d 143, 159-160.) The foundation, therefore, for the reasonable belief in consent defense is evidence from which the jury could conclude the defendant acted under a *mistake of fact* that created a reasonable belief the victim consented to the charged acts.

CALJIC No. 10.40.1[2] was based on the holding of *People* v. *Mayberry, supra,* 15 Cal.3d 143. In *Mayberry,* the defendant argued the sexual activity between himself and the complaining witness was consensual. The evidence showed the prosecutrix did not avail herself of opportunities to escape or to get help, and later did not resist the defendant's sexual advances once inside the defendant's apartment. The defendant requested an instruction that his reasonable belief in consent was a defense to the charge. The trial court refused the instruction but the Supreme Court reversed, saying that "while the verdicts impliedly found that the victim did not consent to accompany Franklin to the apartment or to the subsequent intercourse, no claim is made, nor does it appear, that the jury by its verdicts in light of the instructions given necessarily rejected the evidence supporting Franklin's assertion that he believed reasonably and in good faith that she had so consented." (*Mayberry, supra,* at p. 158.)

Defendant relies on *People* v. *Anderson* (1983) 144 Cal.App.3d 55 [192 Cal.Rptr. 409], for his contention the trial court had a sua sponte duty to instruct the jury in the *Mayberry* defense. *Anderson* in turn relied on dictum in *People* v. *Hampton* (1981) 118 Cal.App.3d 324, 329-330 [173 Cal.Rptr. 268], where the court stated that "the defendant who relies on the defense of consent necessarily also relies on the defense that he had a reasonable and good faith belief that there was consent." The *Anderson* court found a duty to give a *Mayberry* instruction because there was substantial evidence of equivocal conduct by one of the victims that would support such a defense. (*People* v. *Anderson, supra,* 144 Cal.App.3d at p. 62.) Moreover, the defendant in *Anderson* tendered a reasonable belief defense and requested the instruction. (*Id.,* at p. 60.) The case is thus distinguishable from the instant one, where defendant neither requested such an instruction nor tendered a defense to support it. Moreover, to the extent *Anderson* and *Hampton* assert that the tender of a consent defense automatically raises the *Mayberry* defense, we disagree.

In *People* v. *Romero* (1985) 171 Cal.App.3d 1149 [215 Cal.Rptr. 634], the court found that defendant's tender of the consent defense did not raise the defense of reasonable belief in consent. The court there held that the *May-*

[2] CALJIC No. 10.40.1 provided: "It is a defense to a charge of forcible oral copulation that the defendant entertained a reasonable and good faith belief that the other person voluntarily consented to engage in oral copulation. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed such other person voluntarily consented to engage in oral copulation, you must give the defendant the benefit of that doubt and acquit him of said charge." In 1987, the CALJIC committee promulgated a new instruction numbered CALJIC 10.40.1 (1987 New) dealing with the substantive crime of oral copulation. It is unclear whether the committee misnumbered the new instruction or whether it intended to withdraw the former instruction on reasonable belief in consent. Given the continued vitality of *Mayberry,* we believe that the former instruction has not been withdrawn.

*berry* defense of reasonable belief in consent "cannot be raised without some evidence that the victim acted in a manner that reasonably could be misunderstood by the defendant. It follows that a trial court need only give a *Mayberry* instruction on its own motion where 'it appears that a defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].)" (*Id.,* at p. 1156.)

The reasonable belief defense derived from *Mayberry* is founded upon evidence showing the defendant acted under a mistake of fact sufficient to harmonize his assertion of consent with the victim's story that consent was lacking. (*People* v. *Mayberry, supra,* 15 Cal.3d at pp. 156-160; *People* v. *Romero, supra,* 171 Cal.App.3d at pp. 1156-1157.) Where there is no evidence putting into issue the nature and quality of the defendant's belief in consent, the trial court is under no duty to instruct the jury on its own motion about the mistake of fact defense.

The evidence before the trial court showed two opposing versions of what happened. Defendant argued the sex was consensual and the charges were made up out of spite. Sharon described a forced sexual encounter performed against her will, during which she was held at knifepoint, handcuffed and had her hair pulled. Defendant's counsel never suggested he was relying on the mistake of fact defense, tendered no evidence to support such a defense, and did not request the instruction defendant now claims it was error to withhold. We find no evidence in the record to support the theory that defendant mistakenly believed Sharon consented even though she in fact did not. Neither account of the encounter brought into focus the reasonableness of defendant's belief that Sharon freely agreed to engage in oral copulation with him. Either the sexual act was entirely consensual or the obvious product of force, depending upon which testimony was credited. Defendant contested the prosecution's showing of force, but he did not seek to show, pursuant to *Mayberry,* that he had a reasonable and good faith belief that Sharon was a willing participant.

It is true that when consent is offered as a defense, we may infer the defendant asserts his belief in consent was reasonable. Moreover, the testimony of the defendant alone can be sufficient to support the duty to instruct the jury in the mistake of fact defense. (See *People* v. *Burnham* (1986) 176 Cal.App.3d 1134, 1148 [222 Cal.Rptr. 630].) However, unless the evidence reveals *some way* to harmonize the conflicting accounts of defendant and prosecutrix through a mistake of fact, so that the jury can evaluate proof relating to defendant's *belief* in consent (as distinguished from his mere *assertion* of consent), the court need not give the reasonable belief instruc-

tion sua sponte. There was no such evidence in this case, and therefore there was no error in the trial court's failure to give CALJIC No. 10.40.1.

## II-V*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The case is remanded to the sentencing court for further proceedings to properly impose a restitution fine. In all other respects, the judgment as modified is affirmed. The trial court is directed to prepare a corrected abstract of judgment and forward same to the Department of Corrections.

Evans, Acting P. J., and Sparks, J., concurred.

---

* See footnote, *ante*, page 1362.