[No. A038542. First Dist., Div. Two. Aug. 16, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM EDWARD PRESTON MAY, Defendant and Appellant.

COUNSEL

Jay Ruskin for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SMITH, Acting P. J.**—Defendant and appellant William Edward Preston May was found guilty of two counts of forcible oral copulation (Pen. Code, § 288a, subd. (c))[1] and one count of assault with intent to commit rape. (Pen. Code, § 220.) Three prior felony convictions were also found to be true. He was sentenced to concurrent eight-year terms on the copulation convictions and a concurrent six-year term on the assault; he was also given an additional year for each of the priors, for a total prison sentence of eleven years.

We will conclude that the court's failure to give an instruction on reasonable good faith belief in consent (the so-called *Mayberry* instruction) and the court's additional failure to define the crime of rape for the jury, constituted reversible error.

## BACKGROUND

Maria T., a divorcee with three children, testified that on the afternoon of Sunday, November 16, 1986, she and her friend Tim went to Joe Frogger's bar in Santa Rosa. She had met Tim at the same bar two weeks ago and had spent the previous night at his apartment.

Maria had two Bloody Marys and was finishing some soup when defendant May walked in. He came up and sat next to her and they engaged in pleasant conversation. He gave her his business card and bought drinks for her. At one point Maria told May she was going to the bathroom to "powder her nose" which, she explained, meant that she was going to snort cocaine. May then told her that he could obtain more cocaine for her. Maria accepted the offer. Without notifying Tim, she left the bar with May, to whom she admitted she felt an attraction.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

Maria and May drove to a bar called "Till Two," where they played pool and drank beer. Maria was feeling the effects of the alcohol. They proceeded to a third bar where they had more drinks, and finally drove to May's apartment. By this time it was getting dark.

Maria walked in and immediately noticed May's father sitting in a wheelchair in the living room. Upon entering, May told Maria that the bedroom light was on and that she should go in there and take her clothes off. He then went into the kitchen and starting cooking something on the stove. She followed him into the kitchen, told him "no" and grabbed a steak knife. May took the knife out of her hand and slapped her face. He grabbed her arm, led her to the bedroom and again told her to disrobe. This time she did not refuse, but "stood there for awhile." Finally, because she was afraid, she took her clothes off and got on the bed.

May removed his clothes and got on the bed with her. She then tried to roll off the bed, but he slapped her again. He positioned himself so that his penis was in her mouth and his mouth was on her vagina. He told her to get his penis "nice and hard," and she began to suck on it because she felt she "had no choice." While they were on the bed, May struck her a number of times with his open hand and closed fist and licked and bit her vagina. At some point while she was orally copulating him, she felt sick and vomited over the side of the bed. Just then the phone rang and May got up and left the bedroom. Maria took advantage of this opportunity to get dressed and left the apartment. She then phoned Tim and obtained a ride back to her car.

May took the stand in his own defense. He testified that at Joe Frogger's Maria looked over at him and smiled and he smiled back. He introduced himself and bought drinks for her and her friends. After "powdering her nose" in the bathroom, Maria returned and asked him if he wanted to "buy some pussy" for $50. He agreed, and they left the bar together.

According to May, after visiting several bars, drinking beer and flirting with each other, he drove Maria to his father's apartment. She followed him into the kitchen where they were "giggling . . . fondling, playing around." She visited the bathroom for a few minutes and then invited him into the bedroom. She offered him cocaine, but he declined because he didn't use hard drugs. She ingested the cocaine herself, and they embraced on the bed. She took off all her clothes, unzipped his fly and orally copulated him. He told her to stop because he had too much to drink and couldn't get an erection. Maria got dressed and told him not to worry because "it could happen to anybody."

They went outside his apartment and she asked for $20 "for the blow job." When he declined to pay because he had not achieved erection, she threatened to have him killed and slapped him. Instinctively, he slapped her back and told her to get lost. When she attempted to kick him in the groin, he slapped her again and kicked her in the groin. He explained his behavior as the product of a "flashback" from an episode in prison when he was assaulted with a pipe and almost killed.

May's father testified that he saw his son and Maria come in to the apartment holding hands and whispering to each other. They drank a beer in the kitchen and she visited the bathroom. She then whispered something in his ear and led him to the bedroom. After 15 to 20 minutes they exited, fully dressed. Mr. May never saw anyone wield a knife, did not hear any unusual noises emanating from the bedroom or observe any bruises on Maria when she left.

APPEAL

I

■ May contends that the court committed reversible error by failing, sua sponte, to give a *Mayberry* instruction. A motion for new trial on this ground was denied by the trial court. We agree that the instruction should have been given.

■ "Under *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], a defendant who entertains both a reasonable and bona fide belief that the victim voluntarily consents to engage in the sexual offense does not have the necessary wrongful intent to be convicted of the crime. [Citations.] The rationale is simple: one who labors under a mistake of fact that negates the existence of any criminal intent cannot be convicted of a crime. [Citations.]" (*People* v. *Castillo* (1987) 193 Cal.App.3d 119, 124 [238 Cal.Rptr. 207].) CALJIC No. 10.40.1 conveys the *Mayberry* defense as it applies to the charge of forcible oral copulation.[2]

■ The trial court has a sua sponte duty to instruct on a defense wherever "it appears that the defendant is relying on such a defense *or* if there is

---

[2]CALJIC No. 10.40.1 states: "It is a defense to a charge of forcible oral copulation that the defendant entertained a reasonable and good faith belief that the other person voluntarily consented to engage in oral copulation. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed such other person voluntarily consented to engage in oral copulation, you must give the defendant the benefit of that doubt and acquit him of said charge."

Note: CALJIC Fifth edition, published in 1988, revised and renumbered the instructions applicable to sex crimes. All CALJIC references herein are to the Fourth edition, which was in use at the time of trial.

substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People v. Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913], italics added; *People v. Romero* (1985) 171 Cal.App.3d 1149, 1156 [215 Cal.Rptr. 634] (*Romero*); *People v. Castillo, supra,* 193 Cal.App.3d at p. 125.)

■ It is evident on the record below that May did not *rely* on the defense of reasonable good faith belief in consent. The essence of his testimony was that Maria was a prostitute. According to May, what transpired was nothing more than a sex-for-money transaction from the outset. However, the *Sedeno* test is disjunctive, not conjunctive. We must therefore still determine whether the defense was (1) supported by substantial evidence and (2) consistent with the defense raised at trial.

■ As we first pointed out in *Romero, supra,* although actual consent and *Mayberry* consent are compatible defenses and may be raised together, they are not inseparable. (171 Cal.App.3d at p. 1154, disagreeing with *People v. Hampton* (1981) 118 Cal.App.3d 324, 329-330 [173 Cal.Rptr. 268].) Thus, if the only evidence from the defendant is unequivocal consent and from the victim nonconsensual forcible sex, a sua sponte *Mayberry* instruction is not required. (*Id.,* at p. 1156; accord *People v. Rhoades* (1987) 193 Cal.App.3d 1362, 1369 [238 Cal.Rptr. 909].) However, where the record contains "some evidence of equivocal conduct by the victim which led [the defendant] to reasonably believe that there was consent where in fact there was none," the instruction should be given. (*Romero, supra,* 171 Cal.App.3d at p. 1156; see also *People v. Castillo, supra,* 193 Cal.App.3d at p. 126; *People v. Mayberry, supra,* 15 Cal.3d at p. 156.) This evidence may come solely from the defendant's mouth (*People v. Burnham* (1986) 176 Cal.App.3d 1134, 1148 [222 Cal.Rptr. 630]), solely from the victim's (*Castillo, supra,* at p. 126), or even from that of a third party (*People v. Anderson* (1983) 144 Cal.App.3d 55, 62 [192 Cal.Rptr. 409]). There is such evidence in this case.

■ Maria's testimony concerning May's behavior from the time she met him at Joe Frogger's to their encounter in the kitchen had all the characteristics of a casual "pick up." May, a man to whom she felt attracted, gave her his business card and bought her drinks; on the promise that he could provide her with cocaine, she left the bar with May without telling the man with whom she came in and in whose apartment she had just spent the previous night. May and Maria went on to visit several other bars, engaged in pleasant conversation, and consumed more alcohol before returning to the apartment of May's father. Upon entering the apartment, May led Maria right past his father, instructed her to take off her clothes, and went into the kitchen.

Maria's version of subsequent events is, to say the least, enigmatic. Instead of voicing an objection to his instruction to disrobe, Maria *followed May into the kitchen,* brandished a steak knife at him and told him "no." On cross-examination, she could not explain why she had not simply turned around and walked out the front door. May responded by taking the knife out of her hand and slapping her.[3] He did not attempt to use the knife nor did he threaten her, but instead led her into the bedroom and again instructed her to take off her clothes. This time Maria displayed no resistance at all; she simply "stood there" for awhile and finally complied.[4] The only other plausible manifestation of nonconsent to the ensuing sex acts was Maria's attempt to roll off the bed, to which May again reacted by slapping her. At no time did he bar her from exiting the apartment, which she did when he got up to answer the telephone. Maria's behavior in willingly accompanying him to the apartment after several hours of merriment, her failure to escape when presented with the opportunity, and her lack of verbal objection while in the bedroom could reasonably have been misinterpreted by May as the conduct of someone playing games rather than resisting his advances. The testimony of May's father further strengthened the inference that Maria behaved as if she were a willing participant in the sexual encounter. Thus, there was unquestionably evidence substantial enough to permit a jury to find that the defendant had a good faith, albeit mistaken, belief that Maria consented to the sexual acts he performed.

The key question we next face is whether the *Mayberry* defense was *inconsistent* with the defendant's theory of the case. The People claim that it was because May testified that the transaction was strictly sex-for-hire. There is no way, the People argue, that such a story can be *reconciled* with a reasonable good faith belief. Their contention finds some support in language from *People* v. *Rhoades, supra,* 193 Cal.App.3d 1362 (*Rhoades*).

In *Rhoades* the victim testified that the defendant, whom she had known for many years, came to her home, held her at knifepoint, robbed her, handcuffed her and forced her to orally copulate him. The defendant, on the other hand, testified that they engaged in oral copulation by mutual consent and that the victim had made up the whole story out of spite. (193 Cal.App.3d at pp. 1365-1366.) The court properly rejected the claim that *Mayberry* instructions were required sua sponte, because there was "no evidence in the record to support the theory that defendant mistakenly

---

[3] The trial judge deemed the knife episode sufficiently serious that he gave a sua sponte instruction on self-defense.

[4] Maria's care in disrobing was such that one of her earrings (which were of the pierced ear variety) together with two backings were found laid out on the bedside table. This troubled the jury enough to send a separate inquiry to the judge asking if the earring posts had been bent before being put in the evidence package.

believed Sharon consented even though she in fact did not. *Neither account of the encounter brought into focus the reasonableness of defendant's belief that Sharon freely agreed to engage in oral copulation with him. Either the sexual act was entirely consensual or the obvious product of force, depending upon which testimony was credited.*" (*Id.,* at p. 1369, italics ours.)

However, in dictum, the court went on to state that a *Mayberry* instruction is not required "unless the evidence reveals *some way* to harmonize the conflicting accounts of defendant and prosecutrix through a mistake of fact, so that the jury can evaluate proof relating to defendant's *belief* in consent (as distinguished from his mere *assertion* of consent) . . . ." (193 Cal.App.3d at p. 1369.) This language unfortunately confuses the *Sedeno* requirement of "consistency" with the concept that the two versions of the encounter must be "harmonizable" or "reconcilable," a notion which the facts of *Mayberry* itself prove false.[5] Few defendants raising a consent defense make mistaken belief the centerpiece of their case; the jury is almost always presented with somewhat conflicting versions of the incident. We have already noted that one purpose of the *Mayberry* instruction is to allow the jury to consider the possibility that both the victim and the accused are, in some respects, telling the truth. (*Romero, supra,* 171 Cal.App.3d 1149, 1155.) ▪ It is equally evident that the instruction should be given where the jury may reasonably conclude that both parties are being less than totally truthful about what happened. ▪ As illustrated in this case, even if the jury refused to give credence to May's testimony recounting an agreement for prostitution, they were still entitled to consider whether, based on his father's testimony and the equivocal conduct set forth in Maria's version of events, he harbored a reasonable and good faith belief in her consent. ▪ As stated in *People* v. *Anderson, supra,* 144 Cal.App.3d 55, "[i]t is elementary that a defendant's state of mind is most often shown through circumstantial evidence *which often prevails over the direct testimony of the defendant to the contrary.*" (*Id.,* at p. 62, italics added.)

▪ The fact that May claimed Maria agreed to exchange sex for money did not remove good faith as an issue in the case. This was not a situation where the defense consists of alibi, mistaken identity, or blanket denial of an obviously forced sexual encounter. May never denied his active participation in the sexual conduct at issue, and substantial evidence produced by both sides supported an inference that he believed she was consenting.

---

[5] In *Mayberry* the victim testified that the defendant accosted her on the street, seized her by the arm, struck her with a bottle, and threatened her in order to get her to accompany him to his apartment. The defendant, on the other hand, testified that she willingly walked home with him and engaged in consensual sex. *Mayberry* still held that the instruction was required because of the victim's testimony that on several occasions she apparently had the opportunity to signal for help or escape, but did not. (15 Cal.3d at pp. 147-149.)

Hence, the *Mayberry* defense was not inconsistent with defendant's theory of the case. ██ ██ (See *People* v. *Burnham, supra,* 176 Cal.App 3d 1134, 1144.)[6]

██ The error in failing to give the instruction must be deemed prejudicial. ██ An erroneous failure to instruct on a defense presented by substantial evidence constitutes a denial of the right to have the jury determine every material issue. (*Mayberry, supra,* 15 Cal.3d at pp. 157-158.) The error may not be cured by our weighing the evidence and finding it not reasonably probable that a correctly instructed jury would have found the defendant guilty since they were never given that opportunity. (*People* v. *Anderson, supra,* 144 Cal.App.3d 55, 62; *People* v. *Rivera* (1984) 157 Cal.App.3d 736, 743 [203 Cal.Rptr. 842].)

The only exception to this rule is where it can be determined the jury necessarily decided the issue adversely to the defendant in another context. (*People* v. *Anderson, supra,* 144 Cal.App.3d at p. 63; *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721.) ██ This exception is inapplicable here. Although the jury resolved the issue of *actual* consent against May, that determination says nothing about how they would have resolved the issue of *reasonable belief* in consent, since they were never asked to consider it. (*People* v. *Burnham, supra,* 176 Cal.App.3d 1134, 1150; *People* v. *Rivera, supra,* 157 Cal.App.3d at p. 744.) The error must be deemed prejudicial. (*People* v. *Anderson, supra,* 144 Cal.App.3d at p. 63.)

The failure to give a *Mayberry* instruction infects not only the forcible copulation convictions, but the assault offense as well. ██ The crime of assault with intent to commit rape requires an assault *accompanied by the specific intent to commit the act of forcible rape*. (*People* v. *Rivera, supra,* 157 Cal.App.3d at p. 741.) "The intent must be to have intercourse against the victim's will. It is not enough to prove merely a purpose to have intercourse." (1 Witkin and Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 411, p. 472.) ██ If the jury found that May

---

[6]The People's citation to *People* v. *Bruce* (1989) 208 Cal.App.3d 1099 [256 Cal.Rptr. 647] does not aid their cause. There, the defendant's attorney expressly disclaimed a *Mayberry* defense in an attempt to preclude the prosecution from using evidence of a prior rape. He insisted his only defense was actual consent and that the victim was a liar. Nevertheless the court permitted the prosecutor to introduce testimony of a prior rape, purportedly on the issue of defendant's reasonable belief in consent. (*Id.,* at pp. 1103-1104.) Division Four of this court reversed, holding that because the *Mayberry* issue had been eliminated, introduction of the prior was irrelevant and prejudicial. (*Id.,* at p. 1105.) By contrast, here there was abundant evidence of equivocal conduct by Maria and defense counsel never renounced a good faith defense.

We take this opportunity to emphasize, however, that a trial judge is under no duty to give *Mayberry* instructions where counsel for the accused objects or, for strategic reasons, otherwise disavows reliance on that defense.

harbored a reasonable belief in Maria's consent to have sexual relations, they would also have to conclude that he lacked the specific intent to commit rape. (*People v. Rivera, supra,* 157 Cal.3d at pp. 741-742.) The omitted instruction therefore deprived May of his right to have the jury determine every issue material to the assault charge. (*People v. Mayberry, supra,* 15 Cal.3d at pp. 157-158.)

## II

■ May also contends the assault count cannot stand due to the court's failure to define the crime of rape for the jury. He is correct.

Where a defendant is charged with assault with intent to commit rape, the jury must first be given CALJIC No. 9.05.5 (listing the elements of this crime) followed by CALJIC Nos. 9.00 *and 10.00* defining the crimes of assault and rape, respectively. (*People v. Rivera, supra,* 157 Cal.App.3d 736, 741.) In giving only CALJIC Nos. 9.05.5 and 9.00 without giving 10.00, the court's instructions were clearly inadequate. (*Ibid.*) The error requires reversal unless it can be said to be harmless beyond a reasonable doubt. (*People v. Lee* (1987) 43 Cal.3d 666, 676 [238 Cal.Rptr. 406, 738 P.2d 752]; *Pope v. Illinois* (1987) 481 U.S. 497, 503-504, fn. 7 [95 L.Ed.2d 439, 447, 107 S.Ct. 1918]; *Chapman v. California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 709, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

The People concede the instructional error but claim that it was cured by references to the crime of rape in closing argument of the prosecutor and defense attorney. The cited excerpts, however, contain only oblique references to the crime and are raised only in the context of exploring why Maria initially falsely stated that she had been raped. Nowhere does either counsel go over the elements of the crime in a fashion consistent with or resembling CALJIC No. 10.00. Moreover, the jurors were told not to consider statements of counsel as evidence (CALJIC No. 1.02) and that their duty was to follow the law as stated to them by *the court.* (CALJIC No. 1.00.)

*People v. Lee, supra,* 43 Cal.3d 666, cited by the People, is radically different from the case at bar. There, in addition to arguments of counsel focusing on the subject, there was "quite strong" evidence of the element (intent to kill) upon which an instruction was lacking. (*Id.,* at p. 677.) Here it was undisputed that no sexual intercourse ever took place, and while there was ample evidence of intent to orally copulate, there was almost *no* evidence of an intent to rape. For this additional reason, the omission was not harmless beyond reasonable doubt and the assault with intent to rape conviction cannot stand.

## DISPOSITION

The judgment is reversed. Due to this disposition, we do not reach the remaining assignments of error.

Benson, J., and Peterson, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 15, 1989.