Filed 2/28/13  P. v. Tercero CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUAN TERCERO and<br>PABLO JIMENEZ CORTEZ,<br><br>    Defendants and Appellants. | G046162<br><br>(Super. Ct. No. 09CF0621)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Thompson, Judge.  Affirmed in part and reversed in part.

Richard De La Sota, under appointment by the Court of Appeal, for Defendant and Appellant Juan Tercero.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant Pablo Jimenez Cortez.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A jury convicted Juan Tercero and Pablo Jimenez Cortez of two counts each of kidnapping during the commission of a carjacking (counts 1 & 2; Pen. Code, § 209.5, subd. (a); all further undesignated section references are to this code); simple kidnapping (counts 3 & 4; § 207, subd. (a)) as a lesser-included offense of kidnapping for robbery; assault with a semiautomatic firearm (counts 5 & 6; § 245, subd. (b)); and one count of second degree robbery (count 7; § 211). The jury also made true findings on numerous personal use of a firearm (§§ 12022.53, subd. (b), 12022.5, subd. (a)) and infliction of great bodily injury (§ 12022.7, subd. (a)) enhancement allegations against Tercero.

On appeal, defendants challenge the sufficiency of the evidence to support the jury's conclusion they kidnapped their two teenage victims, Sarah T. and Lacy H., during the commission of a carjacking. Cortez also argues the trial court failed to instruct the jury on the specific intent necessary for aiding and abetting a kidnapping in counts 3 and 4. But the Attorney General concedes, and we agree, defendants' convictions on these counts must be reversed because simple kidnapping is a lesser-included offense of kidnapping during the commission of a carjacking charged in counts 1 and 2, rendering Cortez's instructional challenge moot. Defendants raise other instructional challenges that are without merit, as we explain. Consequently, we reverse defendants' convictions on counts 3 and 4, and affirm the judgment in all other respects.

I

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of March 8, 2009, Tercero attended a party with a friend, Rene Garcia. After leaving the party, Tercero met Cortez and Justo Garcia at an Orange County nightclub. Tercero drank heavily at the club, and when the club closed,

2

the group visited the home of Rene Garcia's girlfriend, who provided tequila for the men. The four men decided to visit Taqueria Mexico, a restaurant behind Tercero's apartment near the intersection of Katella and Cambridge in Orange.

Sometime after 3:30 a.m., Tercero, Cortez, and their companions noticed Sarah and Lacy, both 19, at Taqueria Mexico. The restaurant was busy, and the women waited in line for several minutes before ordering and sitting down at a table to eat their food. Sarah and Lacy, regular customers at the restaurant, were friendly with the cashier and other customers.

Tercero, Cortez, and their friends had entered Taqueria Mexico shortly after Lacy and Sarah and,after ordering his food, Tercero sat at a table next to Lacy and attempted to start a conversation with her, but she ignored him. When Sarah and Lacy left the restaurant, Tercero, Cortez, and their companions followed the women. Sarah and Lacy entered Sarah's red Chevrolet Cobalt and began driving home via the 55 Freeway; they exited the freeway at Irvine Boulevard and stopped at the traffic signal at the intersection of Irvine Boulevard and Newport Avenue. Having followed the women in a black Toyota Yaris, Tercero, Cortez, and their companion rear-ended Sarah's car. It was not a hard impact, but Sarah hesitated and then pulled into the parking lot of an adjacent Ralph's grocery store, and the Yaris followed.

Tercero pulled his vehicle into a parking space near Sarah's car, then exited his car and approached the driver's side of the Cobalt, while Cortez exited the Yaris and approached Lacy's side of the car. During a brief conversation with the women, Tercero apologized in a manner Lacy felt was "fake," and then displayed a gun, brandished it at the women, and ordered them out of their car. Sarah and Lacy panicked; Tercero opened Sarah's door and as she began trying to speed away, he forced her seat forward and

3

entered the backseat of the two-door Cobalt. Cortez ran back to the Yaris, and the car sped around Sarah's Cobalt as it left the parking lot. Tercero put his gun to Sarah's head and ordered her to follow the Yaris. Yanking their hair and pointing his gun at them, Tercero threatened to kill both women. Lacy urged Sarah to disregard Tercero's commands because she did not think the men intended to steal anything from them once they arrived wherever they were going; instead, she feared much worse.

Sarah initially complied with Tercero's orders for a few blocks before abruptly turning into a church parking lot near Red Hill and Irvine Boulevard. The Yaris continued on at first, but quickly returned to the church parking lot. When Sarah parked the car, Tercero tried to pull the keys out of the ignition. Cortez and two of the other men approached the Cobalt as Tercero pushed his way out of the backseat. Tercero kept his gun aimed at Sarah's head while the other three men attempted to drag Sarah and Lacy from the car. The men repeatedly punched, kicked, and choked Sarah. Sarah's hand was cut as she fought to protect her car keys. Tercero struck Sarah with the butt of his gun, knocking her unconscious.

Meanwhile, Cortez succeeded in pulling Lacy out of the car and dragged her toward the Yaris, but Lacy broke free and ran back to the Cobalt, quickly reentering the car on the passenger side. Cortez returned to the Cobalt and punched Lacy in the face before Tercero knocked her unconscious by hitting her with his gun. The four men returned to the Yaris and exited the church parking lot.

Responding to a 911 call made by a witness to the initial altercation in the Ralph's parking lot, a Tustin police officer spotted the Yaris leaving the church parking lot with its lights off. The officer engaged his patrol vehicle's sirens and lights and pursued the Yaris, which ran several red lights at speeds up to 100 miles per hour. After

4

approximately six miles, the Yaris reduced its speed and one of the occupants jumped out. Moments later, another occupant jumped out. Abandoning his pursuit of the Yaris, the officer returned to where he had seen the passengers jump out of the car and found a Santa Ana police officer had apprehended Tercero. A search of Tercero revealed Chevrolet car keys and a cell phone.

Back in the church parking lot, Sarah regained consciousness in time to see the police pursuing the Yaris. Lacy also came to, and the women flagged down a passing vehicle and used the driver's cell phone to call 911. When the police arrived, Sarah pointed out a gun on the ground in the church parking lot. Asked about the gun after he was apprehended, Tercero admitted throwing it out of the car window in the church parking lot when he saw the police officer begin his pursuit. Police later learned of Cortez's involvement and arrested him.

After the jury convicted Tercero and Cortez as noted above, the trial court sentenced Tercero to life in prison with the possibility of parole for kidnapping during the commission of a carjacking (counts 1 and 2), plus 50 years on the remaining counts and allegations, including gun use enhancements, and sentenced Cortez to life in prison with the possibility of parole on counts 1 and 2, plus eight years on the remaining counts. Defendants now appeal.

## II

## DISCUSSION

A.    *Simple Kidnapping and Kidnapping in Committing Carjacking*

1.    Substantial Evidence Supports the Kidnapping and Carjacking Convictions

Defendants challenge the sufficiency of the evidence to support their convictions for kidnapping their victims in the course of a carjacking (counts 1 & 2) and

simple kidnapping (counts 3 & 4). On appeal, the reviewing court must view the evidence in the light most favorable to the judgment. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) It is the trier of fact's exclusive province to assess witness credibility and to weigh and resolve conflicts in the evidence. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 (*Sanchez* ).) We therefore presume the existence of every fact reasonably inferred from the evidence in support of the judgment. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) The test is whether substantial evidence supports the conclusion of the trier of fact, not whether the appellate panel is persuaded the defendant is guilty beyond a reasonable doubt. (*Ibid.*; *People v. Johnson* (1980) 26 Cal.3d 557, 576.) In other words, reversal is not warranted even though the circumstances could be reconciled with a contrary finding. (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.) Thus, a defendant attacking the sufficiency of the evidence "bears an enormous burden." (*Sanchez*, at p. 330.)

Defendants contend they did not commit kidnapping or kidnapping in the course of a carjacking because Tercero "did not force the victims to move from one location to another," and they did not commit carjacking because "neither [Tercero] nor his companions ever gained control of the victim's vehicle." We are not persuaded.

Kidnapping, and thus the greater offense of kidnapping during the commission of a carjacking (§ 209.5), requires that the perpetrator move the victim in a substantial manner by force or fear, without the person's consent. (*People v. Arias* (2011) 193 Cal.App.4th 1428, 1434-1435; see § 207, subd. (a) ["forcibly . . . carr[ying]" away victim against his or her will constitutes kidnapping].) Nothing "limits the asportation element solely to actual distance" (*People v. Martinez* (1999) 20 Cal.4th 225, 236); rather, "'the "scope and nature" of the movement . . . , and any increased risk of

6

harm'" are also relevant. (*People v. Bell* (2009) 179 Cal.App.4th 428, 436.) Thus, the jury's consideration may include "such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, [or] increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes. [Fn. omitted.]" (*Martinez*, at p. 237; see *People v. Shadden* (2001) 93 Cal.App.4th 164, 169 [movement of victim nine feet sufficient to support asportation element].)

Defendants contend *they* did not compel the victims' movement because Sarah made the initial decision to drive away while trying to escape Tercero, and she similarly ended their asportation by pulling into the church parking lot, ignoring Tercero's contrary directions to follow Cortez's car. The jury, however, reasonably could conclude a kidnapping occurred as soon as Tercero entered the car, pointed his gun at Sarah and Lacy, and directed Sarah to "drive" and to "continue" to follow Cortez's car. Indeed, the testimony supported the conclusion Sarah did not succeed in putting her car in gear before Tercero forced his way into the vehicle, and the women explained their fear and panic at his intrusion.

Accordingly, the jury reasonably could conclude Sarah complied with Tercero's instructions not of her own volition but because she was "scared," and although she only traveled a few blocks before attempting to escape, the jury reasonably could conclude this compelled movement in a vehicle constituted kidnapping. It substantially increased the risk of harm to the victims, posed the danger of a decreased chance of detection and enhanced opportunities for their attackers to commit additional crimes, and their foreseeable escape attempts became more dangerous because they were moving at high rates of speed in a vehicle, and actually resulted in substantial harm when

7

defendants pistol whipped them in the parking lot, knocking both unconscious. In particular, Sarah described how she planned a desperate escape and "at that point" made the decision "to stick up for myself," ignore Tercero's commands, and turn into the church parking lot. ~(RT 123)~ The jury reasonably could infer from this testimony that until "that point" Sarah piloted her vehicle as Tercero commanded at gunpoint and not by choice. Ample evidence supports the kidnapping charges (counts 3 & 4) and the kidnapping element of kidnapping during the commission of a carjacking (counts 1 & 2).

Substantial evidence also supported the carjacking element of counts 1 and 2. Kidnapping during the commission of a carjacking requires a completed carjacking. (*People v. Contreras* (1997) ) 55 Cal.App.4th 760, 765.) "'Carjacking' is the felonious taking of a motor vehicle in the possession of another . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).) "[A] felonious taking can occur under the carjacking statute when the victim remains in the car." (*People v. Duran* (2001) 88 Cal.App.4th 1371, 1375; see also *People v. Lopez* (2003) 31 Cal.4th 1051, 1060-1062 [noting Legislature was "specifically concerned with the 'considerable increase in the number of persons who have been abducted' *in* their vehicles," italics added].) Accordingly, the jury reasonably could conclude defendants accomplished the necessary temporary taking of the victims' car when Tercero gained control over the vehicle by directing Sarah at gunpoint where to drive. Defendants' substantial evidence challenge is without merit.

2.      Conceded Reversal on the Lesser-Included Simple Kidnapping Offenses

The Attorney General concedes defendants' convictions on counts 3 and 4 for simple kidnapping of Sarah and Lacy must be reversed as lesser-included offenses of

8

counts 1 and 2, kidnapping during the commission of a carjacking. Both sets of offenses were based on the same forcible movement of the victims. The latter offenses include the former because they cannot be committed without also committing kidnapping. (*People v. Medina* (2007) 41 Cal.4th 685, 701-702.) The trial court stayed counts 3 and 4 under section 654, but an individual may not be convicted of both the greater crime and a lesser-included offense. (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 415.) "If the evidence supports the verdict as to a greater offense, the conviction on that offense is controlling, and the conviction of the lesser offense must be reversed." (*People v. Moran* (1970) 1 Cal.3d 755, 763.) Consequently, we will direct the trial court to reverse defendants' convictions on counts 3 and 4.

### 3. Moot Instructional Claim Regarding Counts 3 and 4

Because his convictions on counts 3 and 4 must be reversed, and there is no basis for a retrial on those counts because they involve the same underlying kidnapping allegations upheld in counts 1 and 2, Cortez's claim the jury was not properly instructed on the specific intent necessary for aiding and abetting liability on counts 3 and 4 is moot. Accordingly, we do not address the issue further.

### B. *Instructional claims*

#### 1. No Evidence Supported an Instruction on Reasonable Belief in the Victims' Consent to Kidnapping

Cortez contends the trial court erroneously failed to instruct the jury that guilt on the kidnapping-related charges required a finding he did not "actually and reasonably believe" the victims "consented to the[ir] movement" when they were allegedly kidnapped. A reasonable belief the victim consented to the physical movement necessary for kidnapping is a complete defense to the crime. (*People v. Eid* (2010)

9

187 Cal.App.4th 859, 869 (*Eid*); *People v. Isitt* (1976) 55 Cal.App.3d 23, 28.) The victim's consent, however, must be voluntary, not coerced. (*People v. Davis* (1995) 10 Cal.4th 463, 517; *Eid*, at pp. 869-870.) Cortez notes that CALCRIM No. 1215 defines simple kidnapping and provides optional language to explain to the jury the requirement "[t]he defendant did not actually and reasonably believe that the other person consented to the movement." The trial court must give the optional language only when the evidence shows a potentially reasonable belief in consent. (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 375 (*Greenberger*).)

Cortez acknowledges his trial counsel agreed to the trial court's decision to instruct the jury without reference to any good faith belief in the victims' consent because the court and counsel concluded there was no evidence of consent or a reasonable belief in consent. Cortez argues the issue is not thereby forfeited, however, because the court and counsel were wrong, and he contends his attorney rendered ineffective assistance of counsel by failing to demand the instruction. We address the issue because if substantial evidence supports a reasonable belief the victim consented, the trial court has a sua sponte duty to give the instruction (*Greenberger*, *supra*, 58 Cal.App.4th at p. 375) and its absence violates the defendant's substantial rights (§ 1259).

But the instruction was not necessary because the evidence supported neither the conclusion the victims consented to their movement, nor a good faith belief in the women's consent. In a violent confrontation after the defendants bumped the victims' car, Tercero entered the car with a gun and pointed it at Sarah and Lacy. Cortez argues that because Tercero directed Sarah to follow the vehicle in which Cortez rode as a passenger, that car was necessarily in front of Sarah's car and therefore Cortez suggests his car must have started moving *before* Sarah's car moved. Cortez surmises from this

10

sequence of events that the jury could infer Cortez returned to his car *before* the encounter became hostile, and the jury therefore also could infer Cortez reasonably believed the women consented to follow the car in which he rode. He cites the women's gregarious behavior at the taco stand as evidence supporting a reasonable belief they freely consented to Tercero accompanying them after the fender bender.

The problem with the inferences Cortez draws is that they are not supported by any evidence. He relies instead merely on conjecture. For example, the evidence showed that the women interacted in a friendly manner with *others* at the taco stand, not with defendants. More importantly, the only evidence concerning *when* Cortez returned to his car was Lacy's testimony that he did so *after* the encounter became violent and Sarah started to drive away, trying to escape Tercero. Lacy testified it was "[a]t the time she [Sarah] started to drive" that Cortez "ran back" from beside Lacy's window to the other car. The evidence does not support the conclusion Cortez was unaware of the unfolding violence. The evidence also showed Cortez's car traveled in front of Sarah's car *not* because it departed first but, as Lacy explained, "They sped around us as we were pulling out of the Ralph's parking lot." Accordingly, because no evidence supports Cortez's appellate claim of a reasonable belief in the women's consent, the trial court was not required to instruct the jury on the topic. Nor was counsel ineffective in failing to

11

request an instruction that no evidence supported. Cortez's claims are therefore without merit.[1]

>    2.     Instruction on Other Lesser-Included Offenses

Defendants contend their convictions on counts 1 and 2 for kidnapping during the commission of a carjacking must be reversed because the trial court failed to instruct the jury on all potential lesser-included offenses. The trial court instructed the jury on carjacking, attempted carjacking, and false imprisonment as lesser-included offenses under counts 1 and 2. On the kidnapping for robbery charges in counts 3 and 4, the trial court also gave the jury the option of returning verdicts on the lesser included offenses of kidnapping, attempted kidnapping, and false imprisonment and, as noted, the jury convicted defendants in counts 3 and 4 of the lesser offense of kidnapping. Defendants argue the trial court should have instructed the jury on counts 1 and 2 that the following crimes were also lesser-included offenses: attempted kidnapping during the commission of a carjacking, kidnapping, and attempted kidnapping. As noted, the Attorney General concedes kidnapping is a lesser-included offense of kidnapping during the commission of a carjacking. (See *Medina*, *supra*, 41 Cal.4th at pp. 690, 694, 701.)

---

[1]     At oral argument, Cortez's appellate attorney suggested the evidence was consistent with the conclusion another person from his car approached Lacy's side of Sarah's vehicle, and therefore the jury could infer Cortez remained in his car ignorant of Tercero's forceful, nonconsensual entry into Sarah's car, and consequently Cortez may have reasonably believed the women followed the Yaris of their own volition and not by force. The contention is forfeited because it was not raised in Cortez's brief and, in any event, consists of conjecture and therefore does not require the instruction Cortez now says was necessary. Specifically, the evidence showed the violent encounter in the Ralph's parking lot prompted a disinterested observer — situated much further away than Cortez's car — to call 911, and the fact Cortez's car sped from behind and around Sarah's car is similarly inconsistent with the notion Cortez was unaware of what was happening in Sarah's car. No evidence supported that conclusion, and therefore the trial court was not required to give the instruction on reasonable belief in consent.

We review claims of instructional error under the *Watson* standard: the appellant must demonstrate it is reasonably probable he or she would have obtained a more favorable outcome absent the claimed error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Because the jury resolved the issues of kidnapping and attempted kidnapping under other properly given instructions, any error in failing to give the omitted instructions under other counts was harmless. (*People v. Rivera* (1984) 157 Cal.App.3d 736, 743.) Specifically, as lesser-included offenses under counts 3 and 4, the trial court properly instructed the jury concerning the elements of kidnapping and attempted kidnapping, and the jury determined defendants kidnapped their victims and rejected their defense they only *attempted* to kidnap them. Consequently, given the evidence underlying counts 1 through 4 was identical, there is no reason to suppose defendants would have fared better on counts 1 and 2 if the jury had been instructed on attempted kidnapping and attempted kidnapping during the commission of a carjacking. Simply put, the jury rejected the notion defendants' acts only amounted to attempted, rather than completed, kidnapping.

The jury *was* instructed on attempted carjacking as a lesser-included offense in counts 1 and 2, but rejected that conclusion. Having rejected the possibility defendants' acts constituted an attempted carjacking or attempted kidnapping, we cannot say it is reasonably likely including any of the instructions defendants now claim were necessary would have made a difference. Defendants rely on the fact that including kidnapping as a lesser offense of kidnapping for robbery *did* make a difference on counts 3 and 4 because the jury convicted them only of kidnapping and not kidnapping for robbery. But unlike counts 3 and 4, counts 1 and 2 did not turn on whether the perpetrator committed kidnapping *for the purpose* of committing an additional offense

13

such as robbery. Rather, kidnapping during the commission of a carjacking, as the name implies, involves simultaneous commission of two offenses, kidnapping and carjacking — not the commission of one to facilitate the other.

Consequently, once the jury rejected on the properly given instructions defendants' claims they only attempted a carjacking, but did not gain control of the vehicle, and only attempted to kidnap the victims, but did not carry them away by force apart from Sarah's independent decisions, there was no reasonable probability of a different verdict than the one the jury reached. Simply put, the jury's conclusions on properly given instructions eliminated the possibility the jury would have convicted defendants of only attempting to kidnap the women, only attempting to carjack them, or only attempting to carjack them and not kidnap them.

### III

### DISPOSITION

Defendants' convictions in counts 3 and 4 for simple kidnapping are reversed. The judgment is affirmed in all other respects.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.


14